889 P.2d 729

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Baldemar GOMEZ, Defendant–Appellant.**

No. 20660.

Court of Appeals of Idaho.

Dec. 21, 1994.

Rehearing Denied Feb. 14, 1995.

Van G. Bishop, Canyon County Public Defender, Nampa, for appellant.

Larry EchoHawk, Atty. Gen., Douglas A. Werth, Deputy Atty. Gen., Boise, for respondent.

LANSING, Judge.

Baldemar Gomez appeals his conviction for two counts of possession of a controlled substance with intent to deliver and the denial of his motion for a reduction of sentence pursuant to I.C.R. 35. We conclude that the admission at trial, over Gomez's objection, of evidence that may have constituted hearsay was harmless error, and that the district court properly refused a jury instruction requested by Gomez to define the word "knowingly." On Gomez's challenge to the sufficiency of the evidence to support his convictions, we conclude that his conviction for possession of cocaine with intent to deliver is supported by substantial, competent evidence, but that the evidence was inadequate to support the jury verdict finding Gomez guilty of possession of marijuana with intent to deliver. We find no merit in Gomez's contention that the district court abused its discretion in imposing a unified sentence of eighteen years with a six-year minimum term of confinement on the cocaine conviction. Accordingly, we affirm the judgment of conviction and sentence for possession of cocaine with intent to deliver and reverse the judgment of conviction for possession of marijuana with intent to deliver.

## I.

### FACTS

In the fall of 1992 a federal postal inspector in Idaho received a tip that a package

containing marijuana was being mailed from Corpus Christi, Texas to Caldwell, Idaho. The inspector was given details regarding the package, including the name of the sender and the name of the addressee, Baldemar Gomez. The package was mailed to an address on Linden Street in Caldwell. The inspector obtained a search warrant, and the package was opened on its arrival in Idaho. A field test indicated the package contained marijuana. The package was resealed, and the inspector arranged, in cooperation with the Idaho Bureau of Narcotics (IBN) and the City/County Narcotics Unit (CCNU),[1] to make a controlled delivery to the Linden Street address. Detectives of the CCNU also obtained a state search warrant to search the residence at that address for cocaine and other evidence of drug trafficking.[2]

On November 3, 1992 the postal inspector obtained a United States' postal delivery vehicle and, while IBN agents conducted surveillance, drove to the Linden street address. Upon his arrival Sylvia Casillas, Gomez's girlfriend, answered the door. The inspector informed her that he had a package for Baldemar Gomez to which she replied, "I'll accept it." The inspector gave her the package and then returned to a staging area in a nearby parking lot. After approximately fifteen minutes the inspector and five other CCNU and IBN narcotics agents returned to the Linden Street address to execute the state search warrant.

The agents arrived in the postal vehicle and used it to block the driveway. They immediately observed two males, one of whom was Gomez, standing in the driveway doing mechanical work on a vehicle. The officers exited the delivery truck and announced that they were police. Gomez began to flee. The other man, Gail Philbrick, did not. Gomez ran between the garage and house into the backyard. An officer gave chase and next observed Gomez "just standing in the backyard" approximately five feet from a trash receptacle. In the trash the

officers found a cardboard beer carton inside of which were a small cloth bag containing 22 grams of cocaine and some United States currency, and a separate plastic bag containing 3.2 grams of cocaine.

The postal inspector and the narcotics agents next entered the residence. There they observed the package of marijuana that had been delivered earlier sitting unopened on a coffee table in the living room.

Based upon the cocaine found in the trash, Gomez was charged with possession of cocaine with the intent to deliver, I.C. § 37–2732(a)(1)(A). (Count I of the information). On the basis of the package of marijuana, Gomez was also charged with possession of marijuana with intent to deliver, I.C. § 37–2732(a)(1)(B). (Count II). Although none of the drugs were found on Gomez's person, at trial the prosecution argued that he had been in constructive possession. A jury found Gomez guilty of both counts and also found him to be a persistent violator of the law under I.C. § 19–2514. Gomez was subsequently sentenced to confinement of not less than six nor more than eighteen years on Count I and not less than two nor more than five years on Count II, with the sentences to be served concurrently.

On appeal Gomez contends that the district court improperly admitted hearsay testimony at trial; that the district court erred in refusing a requested jury instruction on the meaning of the word "knowingly;" that the trial evidence was insufficient to prove that he possessed the controlled substances; and that the court abused its discretion when it denied his motion for reduction of the sentences.

## II.

### HEARSAY

At trial Officer Creech testified about his investigation of the drug-dealing activity of Gail Philbrick. The officer said that he had

---

1. The City/County Narcotics Unit is a joint effort of the City of Nampa, Police Department and the Canyon County Sheriff's department.

2. This warrant was obtained as a result of an independent investigation involving an attempted

controlled purchase that occurred the day before the search at issue in this case. There, agents had attempted to purchase cocaine from Gail Philbrick, whom the police believed to be a dealer that was supplied by Gomez.

delivered marked money to a confidential informant who was to use the money to purchase cocaine from Philbrick. The informant wore a transmitter during the meeting with Philbrick which allowed Creech to overhear their conversations. Philbrick did not deliver drugs at that meeting, but took the money and immediately travelled to the residence on Linden Street where Gomez was staying. As evidence that Gomez intended to deliver drugs to Philbrick, the prosecution asked officer Creech about the conversation he heard between the informant and Philbrick regarding the transfer of money for drugs:

Q: During the course of the conversation with Mr. Philbrick, did you overhear any conversation indicating a transfer of the funds?

MR. BUTLER: Your Honor, I'll object as basing an answer based on hearsay of what he overheard, Judge. It's inadmissible in evidence.

THE COURT: Overruled. I'll permit it.

. . . .

THE WITNESS: Yes, I could clearly hear the conversation and when the transfer of funds occurred.

Gomez asserts that this testimony was hearsay and should have been excluded.

■ Hearsay, which is made generally inadmissible by Idaho Rule of Evidence 802, is defined as: "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." I.R.E. 801(c). The hearsay rule not only prohibits repetition of the actual out-of-court statement; it also applies where the witness attempts to convey the substance or purport of the statement. Therefore, a hearsay objection may not be avoided merely by having the witness give a summary of the conversation or convey the purport of the information received rather than relating the details of the statement. If the purpose of such testimony is to prove the truth of facts asserted in the out-of-court statement, the proffered testimony is hearsay. *See* 2 KENNETH S. BROUN et al., McCORMICK ON EVIDENCE § 249 at 104–105 (John W. Strong

ed., 4th ed. 1992) [hereinafter McCORMICK]; *State v. Judkins,* 242 N.W.2d 266 (Iowa 1976); *Commonwealth v. Parks,* 273 Pa.Super. 506, 417 A.2d 1163 (1979); *Schaffer v. State,* 777 S.W.2d 111 (Tex.Cr.App.1989).

■ Not all out-of-court statements are hearsay, however. If the statement is not an assertion of fact or is not offered to prove the fact asserted, it is not hearsay. Thus, words which accompany acts and are considered "verbal parts of acts" fall outside of the hearsay definition. "Explanatory words which accompany and give character to [a] transaction are not hearsay when under the substantive law the pertinent inquiry is directed only to objective manifestations rather than to the actual intent or other state of mind of the actor." McCORMICK, § 249 at 102. Such verbal parts of acts may include words accompanying the handing of money from one person to another. *Id.;* REPORT OF THE IDAHO STATE BAR EVIDENCE COMMITTEE, Comment to Rule 801 at 403 (1983 & Supp.1985) *citing* 4 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE ¶ 801(a)[02] at 62 (Supp.1983).

The prosecutor's question to Officer Creech in this case may have elicited hearsay. The question as phrased asked whether Officer Creech overheard a conversation *indicating a particular fact*—that funds were transferred. Hence, even an answer stating only, "yes," would relate some content or purport of what was said even though the question did not request and the witness did not relate the actual statements that were heard.

It is possible, however, that the statements upon which Officer Creech relied for his conclusion that the money was transferred were not hearsay but, rather, fell within the category of the "verbal part of the act," of transferring money or were statements that contained no factual assertion, such as, "Go ahead and count the money." This Court cannot determine whether Officer Creech's response related the "purport" of factual assertions made by the out-of-court declarants, which would constitute hearsay, or related a conclusion that Officer Creech drew from non-hearsay statements.

In this circumstance, where it appears that a question directed to the witness may call for hearsay, the appropriate response is for the trial court to sustain the objection unless the proponent of the testimony shows, by an offer of proof, that the out-of-court statement upon which the testimony is grounded is not hearsay. Accordingly, the district court here should have sustained the defense objection to the prosecutor's question unless and until it was shown through an offer of proof that the out-of-court statements on which Officer Creech would base his testimony were not hearsay.

This does not end our inquiry however, for a judgment will not be reversed for an error in an evidentiary ruling "unless a substantial right of the party is affected . . ." I.R.E. 103. In a criminal case, therefore, error in the admission or exclusion of evidence will not result in a reversal if the error was harmless beyond a reasonable doubt. *State v. Medrano,* 123 Idaho 114, 120, 844 P.2d 1364, 1370 (Ct.App.1992); *State v. Brazzell,* 118 Idaho 431, 435, 797 P.2d 139, 143 (Ct.App.1990).

We are convinced beyond a reasonable doubt that admission of this testimony by Officer Creech was harmless error because other non-hearsay evidence amply proved that the informant gave the money to Philbrick. Officer Creech testified that he gave marked money to the informant and instructed the informant to attempt to purchase cocaine from Philbrick. Upon the informant's return from his meeting with Philbrick, Officer Creech searched the informant and found that the money was no longer in the informant's possession. Later, when the police raided the Linden Street address, part of the marked money was found on Gomez. Philbrick had visited Gomez during the interim and was present when the raid occurred. Philbrick testified that he went to Gomez because he believed he could purchase cocaine from him. The only reasonable inference to be drawn from this evidence is that the informant gave the money to Philbrick who then transferred it to Gomez in an attempt to purchase drugs. Thus, the fact related by the objectionable testimony was otherwise established by admissible evidence,

and the admission of the challenged testimony was harmless.

## III.

### JURY INSTRUCTION

We next address Gomez's contention that he was entitled to a jury instruction defining the word "knowingly" as that word was used in an instruction regarding constructive possession. Gomez requested an instruction based upon I.C. § 18–101(5), which provides:

The word "knowingly," imports only a knowledge that the facts exist which bring the act or omission within the provisions of this code. It does not require any knowledge of the unlawfulness of such an act or omission.

The district court ruled that such an instruction was unnecessary because the jury would understand the term in its common, ordinary sense. We agree.

Whether a requested instruction was improperly refused is a question of law that is subject to our free review. *State v. Gleason,* 123 Idaho 62, 65, 844 P.2d 691, 694 (1992). Our analysis focuses upon the instructions that were given and the evidence adduced at trial. *State v. Johns,* 112 Idaho 873, 881, 736 P.2d 1327, 1335 (1987); *State v. Evans,* 119 Idaho 383, 385, 807 P.2d 62, 64 (Ct.App.1991).

A requested instruction need not be given where the subject is adequately covered by other instructions. *State v. Rhoades,* 121 Idaho 63, 76, 822 P.2d 960, 973 (1991); *Evans,* 119 Idaho at 385, 807 P.2d at 64. In Gomez's case the jury was instructed that one element of the offense of possession of a controlled substance with intent to deliver was "that the defendant had knowledge of [the substance's] presence." Another instruction informed the jury that a person is in constructive possession of an item if the person "knowingly has access to the thing and the right and power to control it and assume custody at his will and has the intent to exercise such power and control over the thing. . . ." The jury was further instructed that possession with intent to deliver re-

quired that the defendant possess the substance "with the specific intent to deliver or furnish the controlled substance to another." These instructions when read together adequately instruct the jury that in order to convict the defendant they must find that he had knowledge that the controlled substances were present. In this context, the words "knowingly" or "knowledge" carry their common, everyday meaning. They are words with a plain meaning that people of ordinary intelligence can understand without further definition. *See State v. Tribe,* 123 Idaho 721, 727 n. 8, 852 P.2d 87, 93 n. 8 (1993). The requested instruction added nothing of substance to that plain meaning.

The second sentence of the statutory definition in I.C. § 18–101(5) does clarify that a defendant charged with having knowingly committed an act need not be shown to have known that the act was unlawful. However, Gomez can hardly have been prejudiced by omission of that portion of the definition. In any event, the same point was made by an instruction which stated: "Where a person intentionally does that which the law declares to be a crime, he or she is acting with criminal intent even though he or she may not know that such act or conduct is unlawful."

It would have been permissible for the trial court to have given an instruction based upon the Section 18–101(5) definition of "knowingly," but there was no error in its declination to do so.

## IV.

### SUFFICIENCY OF THE EVIDENCE

#### A. COUNT I—COCAINE

Next we address Gomez's contention that there was insufficient evidence to support a finding of guilt on Count I relating to the cocaine found in the trash receptacle. Gomez maintains that the State failed to prove that he possessed this cocaine. The State responds that the only reasonable inference to be drawn from the evidence is that Gomez placed the drugs and currency in the trash receptacle just prior to his arrest and, therefore, had such access and control over the items as to be in "constructive" possession if not actual possession.

Appellate review of the sufficiency of the evidence supporting a criminal conviction is limited. A verdict will not be set aside where there is substantial evidence upon which a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560, 573 (1979), *reh'g denied* 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State v. Filson,* 101 Idaho 381, 386, 613 P.2d 938, 943 (1980); *State v. Decker,* 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct.App.1985). In deference to the jury's special role of assessing the credibility of witnesses and weighing the evidence, in reviewing a guilty verdict we view the evidence and any reasonable inferences drawn therefrom in the light most favorable to the prosecution. *State v. Campbell,* 104 Idaho 705, 718–19, 662 P.2d 1149, 1162–63 (Ct.App.1983); *State v. Fenley,* 103 Idaho 199, 203–04, 646 P.2d 441, 445–46 (Ct. App.1982).

Possession of a controlled substance may be actual or constructive. When the accused is not in actual physical possession the State must show that he had such knowledge and control of the substance as to establish constructive possession. *State v. Warden,* 97 Idaho 752, 554 P.2d 684 (1976); *State v. Burnside,* 115 Idaho 882, 885, 771 P.2d 546, 549 (Ct.App.1989); *State v. Garza,* 112 Idaho 778, 784, 735 P.2d 1089, 1095 (Ct. App.1987). Accordingly, it was the State's burden to prove Gomez knew of the cocaine in the trash and exercised dominion and control over it.

Knowledge that drugs are present normally is not proved merely by their existence on premises where the defendant is in non-exclusive possession, but such proof may be established where there are other circumstances that support an inference of defendant's knowledge and control. *State v. Randles,* 117 Idaho 344, 347, 787 P.2d 1152, 1155 (1990); *State v. Fairchild,* 121 Idaho 960, 969, 829 P.2d 550, 559 (Ct.App.1992).

Although Gomez was not in exclusive possession of the premises where the cocaine

was found, other substantial evidence was presented from which the jury could infer that Gomez was aware of and exercised control over the cocaine. In *State v. Greene*, 100 Idaho 464, 466, 600 P.2d 140, 142 (1979), our Supreme Court stated, "Suspicious behavior of a defendant when he becomes aware of the police is a circumstance that can link him to drugs found on the premises of which he is in non-exclusive possession." Here, Gomez acted suspiciously when the police arrived. His flight from the police followed by his nonchalant behavior in the backyard supports an inference that Gomez had the cocaine in his possession when the police arrived, that he fled to the backyard and disposed of the contraband by placing it in the trash and that he then stood by until the police caught up to him.[3] Although the drugs were not found on Gomez, they were found in a place that was readily accessible to him at the time of his apprehension and under circumstances suggesting that he had placed the drugs there. The jury could reasonably disbelieve Gomez's story that he never saw the police and merely went to the backyard to search for a puppy. In addition, evidence of Gomez's interaction with Philbrick, and his possession of marked currency that had been given to Philbrick by an informer to purchase cocaine, supports an inference that Gomez exercised control over the cocaine found in the trash. Gomez's conviction for possession of cocaine is supported by substantial evidence.

## B.  COUNT II—MARIJUANA

Gomez also challenges the jury verdict as to count II of the information charging him with possession of the package of marijuana that had been mailed to him. Although the jury returned a guilty verdict on this charge, we conclude that the evidence was insufficient to support the conviction on this count.

In *Commonwealth v. Aguiar*, 370 Mass. 490, 350 N.E.2d 436, 442 (1976), the Supreme Judicial Court of Massachusetts held that, in the absence of other evidence, possession of an unopened package containing drugs, which was received through the mail moments before the defendant's arrest, would not warrant an inference beyond a reasonable doubt that the defendant possessed the drugs knowingly. Similarly, in *State v. Richards*, 155 N.J.Super. 106, 382 A.2d 407, 411 (App.Div.1978), the court observed:

> Other jurisdictions which have dealt with this problem have uniformly concluded that knowing or intentional possession cannot be inferred merely from the fact of delivery to defendant by mail or common carrier of a sealed package containing the illegal goods, and that acceptance of the package by itself cannot yield an inference of knowledge by the recipient of its contents. Rather, something more by way of attendant circumstances must be shown from which an inference can be drawn that defendant also knew what was in the package and intended to assert possessory control over it. The reason for the "something more" requirement is evident. Without it, the recipient of the package would be liable to conviction, not because of the criminality of his own behavior but because of the wholly unilateral act of the sender. Obviously, in a jurisprudential system dependent upon substantive due process, criminal consequences cannot be permitted to attach to an everyday and commonplace occurrence over which one has no control, such as here, the unanticipated receipt of mail.

We concur with this view, which is shared by numerous other jurisdictions. *See, e.g., People v. Larsen*, 180 Colo. 140, 503 P.2d 343 (1972); *Rutskin v. State*, 260 So.2d 525 (Fla. Dist.Ct.App.1972); *People v. Ackerman*, 2 Ill.App.3d 903, 274 N.E.2d 125 (1971); *State v. Smith*, 203 Mont. 346, 661 P.2d 463 (1983); *People v. Patello*, 41 A.D.2d 954, 344 N.Y.S.2d 33 (1973); *Commonwealth v. Sterling*, 241 Pa.Super. 411, 361 A.2d 799 (1976).

■ Here, the State's evidence on the charge of possession of marijuana with intent to deliver consisted of the bare fact that a

---

**3.** In his appellant's brief, Gomez asserts that Philbrick also ran into the backyard, and on that assertion he posits an argument that there was no basis to infer that Gomez, rather than Philbrick, had deposited the drugs in the trash.

However, no evidence presented at trial indicated that Philbrick fled to the backyard with Gomez. To the contrary, all testimony on this point states that Philbrick did not run from police but, rather, stayed on the driveway.

package containing marijuana and addressed to Gomez was delivered at his girlfriend's residence where he sometimes stayed. The State offered no evidence that Gomez had requested the package be delivered to him, that he had purchased the contents, that he was aware of the contents, that he was acquainted with the sender, or that he was even aware that the package had been delivered. Surveillance officers did not observe Gomez enter or exit the house after delivery of the package, and Gomez's fingerprints were not found on it. Gomez's possession of the cocaine found in the backyard and his apparent involvement in cocaine trafficking does not constitute evidence that he knowingly possessed the package of marijuana in question.

Due to the insufficiency of the evidence to sustain the guilty verdict, the judgment of conviction as to Count II is reversed.

## V.

## MOTION FOR REDUCTION OF SENTENCE

Finally, Gomez contends that his sentence on Count I, a minimum term of six years' confinement followed by a twelve-year indeterminate term, is unreasonable under the circumstances and that his motion for reduction of sentence pursuant to I.C.R. 35 should have been granted.

■ A motion under Rule 35 is essentially a request for leniency and is addressed to the sound discretion of the sentencing court. *State v. Lopez,* 106 Idaho, 447, 450, 680 P.2d 869, 872 (Ct.App.1984). In reviewing the denial of a motion for a sentence reduction we use the same criteria that apply in determining whether the original sentence was reasonable. *State v. Forde,* 113 Idaho 21, 22, 740 P.2d 63, 64 (Ct.App.1987). Our focus is upon the nature of the offense and the character of the offender. *State v. Reinke,* 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct.App.1982). Where a sentence is not illegal, the defendant bears the burden of showing that it is unreasonably harsh in light of the primary objective of protecting society and the related goals of deterrence, rehabilitation and retribution. *State v. Brown,* 121

Idaho 385, 825 P.2d 482 (1992); *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). For purposes of appellate review, we consider the minimum period of confinement to be the probable duration of defendant's incarceration. *State v. Sanchez,* 115 Idaho 776, 777, 769 P.2d 1148, 1149 (Ct. App.1989).

■ The sentence imposed on Gomez upon his conviction for possession of cocaine with intent to deliver is well within the statutory maximum of I.C. § 37–2732(a)(1)(A), which allows for life imprisonment. Therefore, Gomez bore the burden of showing that his sentence was unreasonably severe under the circumstances. Gomez's criminal history included at least five previous convictions for felonies, including second degree murder, voluntary manslaughter, assault on a correctional officer, possession of stolen property and possession of cocaine. At the time of his arrest on the current charges, Gomez was at liberty on bail awaiting sentencing for possession of stolen property and possession of controlled substances. Gomez had been incarcerated a total of approximately twenty years and had been at liberty for only three years before being arrested in this case.

At the sentencing hearing the district court expressed its belief that Gomez was a danger to society and that his previous periods of confinement had done nothing to either rehabilitate him or to deter him from committing future crimes. Therefore, the Court concluded that a lengthy period of confinement was necessary in order to protect society. We find no abuse of the district court's discretion in this conclusion.

The judgment of conviction and sentence for possession of cocaine with intent to deliver is affirmed. The judgment of conviction for possession of marijuana with intent to deliver is reversed.

WALTERS, C.J., and PERRY, J., **concur.**