2 P.3d 747

STATE of Idaho, Plaintiff–Respondent,

v.

Carlos Toribio SALINAS, Defendant–
Appellant.

No. 24941.

Court of Appeals of Idaho.

Feb. 24, 2000.

Review Denied June 8, 2000.

Alan E. Trimming, Ada County Public Defender; David J. Smethers, Deputy Public Defender, Boise, for appellant. David J. Smethers argued.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

LANSING, Judge.

Carlos Toribio Salinas appeals from his conviction for possession of a controlled substance, challenging the partial denial of his motion to suppress evidence. He also asserts a violation of his right to a speedy trial. We affirm.

## I.

### BACKGROUND

Lieutenant Daniel Miller of the Boise City Police Department responded to a noise complaint in the early morning hours of October 28, 1998. Upon arriving at an apartment complex from which the noise emanated, Miller saw a car parked in front of the complex and a lighted apartment with an open door. Music was coming from both the car and the apartment. A man standing near the car turned and walked into the apartment as the officer approached. As he followed the man toward the apartment, Miller recognized a woman who was asleep in the car. Miller entered the apartment and made contact with the man whom he had followed and a second man who was standing in the living room. The police officer attempted to get information from the men, but some language barrier existed. After glancing around the apartment, Miller positioned himself in the doorway of the apartment and awaited backup.

When another officer arrived, Miller left his spot at the door and went back to the car with the sleeping woman, whom Miller identified as Stacey Gallegos. Miller woke up Gallegos, who told him that she was the renter of the apartment and requested his assistance in breaking up the party. Miller returned to the apartment to eject the occupants as Gallegos had requested. After clearing the main living area, he proceeded to the bedrooms. In one of the bedrooms Miller found the defendant, Carlos Salinas, and his girlfriend, Sylvia Daniel, asleep on the bed. Miller stationed himself at the foot of the bed and told Salinas and Daniel to get up. As they did so, Miller saw what he thought to be a bag of controlled substance at the foot of the bed. He also noticed drug

paraphernalia in a trash can. Salinas and his girlfriend were taken into the living room while Miller conducted an additional search of the bedroom. During his subsequent search, Miller found a gun under the pillow where Salinas had been sleeping.

Salinas was arrested and charged with possession of a controlled substance, Idaho Code § 37–2732(c), possession of drug paraphernalia, I.C. § 37–2734A, unlawful possession of a firearm, I.C. 18–3316, and resisting and obstructing a police officer,[1] I.C. § 18–705. Salinas thereafter moved to suppress the evidence discovered in the bedroom.

After receiving testimony and reviewing the preliminary hearing transcript, the district court denied the suppression motion. As a threshold matter, the district court found that Salinas and Daniel had moved into the apartment and therefore had a reasonable expectation of privacy in the bedroom. The court went on to hold that Officer Miller was lawfully in the apartment at all times for purposes of investigating a misdemeanor and that the second entry was made with the renter's consent. The court found that once the officer was inside the apartment, the drugs and paraphernalia were in plain view. Therefore, the district court denied Salinas' motion to suppress the evidence. The district court did grant Salinas' motion as to the weapon, finding Miller's subsequent search of the bedroom to be unreasonable. Subsequently, Salinas pleaded guilty to one count of possession of methamphetamine, reserving the right to appeal the denial of the suppression motion.

On appeal, Salinas argues that the district court erred in holding that the need to investigate a misdemeanor justified Officer Miller's warrantless entries into the apartment. Salinas also questions the admissibility of evidence of Gallegos' consent to the second entry, and he contends that the consent did not extend to the bedroom where he slept.

## II.

## ANALYSIS

■ An appellate court employs a bifurcated standard of review when evaluating the denial of a motion to suppress. We give deference to the lower court's findings of fact, unless they are clearly erroneous. We will, however, freely review the lower court's determination of whether constitutional standards have been satisfied in light of the facts. *State v. Hawkins,* 131 Idaho 396, 400, 958 P.2d 22, 26 (Ct.App.1998); *State v. Pick,* 124 Idaho 601, 603, 861 P.2d 1266, 1268 (Ct.App. 1993). The trial court's determination of whether a search is reasonable, and therefore complies with the Fourth Amendment, is a question of law over which we exercise free review. *Hawkins, supra; State v. McIntee,* 124 Idaho 803, 804, 864 P.2d 641, 642 (Ct. App.1993).

■ The Fourth Amendment to the United States Constitution safeguards "[t]he right of the people to be secure in their ... houses ... against unreasonable searches and seizures." The core of the Fourth Amendment is "the right of a man to retreat into his own home and there be free of unreasonable governmental intrusion." *Silverman v. United States,* 365 U.S. 505, 511, 81 S.Ct. 679, 682, 5 L.Ed.2d 734, 738 (1961). An officer's warrantless entry into a residence is presumptively unreasonable and prohibited by the Fourth Amendment. *Welsh v. Wisconsin,* 466 U.S. 740, 748, 104 S.Ct. 2091, 2096, 80 L.Ed.2d 732, 742 (1984); *State v. Curl,* 125 Idaho 224, 225, 869 P.2d 224, 225 (1993); *State v. Abeyta,* 131 Idaho 704, 707, 963 P.2d 387, 390 (Ct.App.1998). Warrants are not required, however, if a search falls under "a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967); *Coolidge v. New Hampshire,* 403 U.S. 443, 455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, 576 (1971). *See also State v. Brauch,* 133 Idaho 215, 218, 984 P.2d 703, 706 (1999); *State v. Ham,* 113 Idaho 405, 406, 744 P.2d 133, 134 (Ct.App. 1987). These exceptions include exigent circumstances, *Payton v. New York,* 445 U.S. 573, 589–90, 100 S.Ct. 1371, 1381–82, 63 L.Ed.2d 639, 652–53 (1980); *Curl, supra,* and consent. *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974);

---

1. Salinas allegedly gave a false name to the officers at the time of his arrest.

*Abeyta, supra.* The burden is on the government to show the applicability of an exception to the warrant requirement. *Coolidge,* 403 U.S. at 455, 91 S.Ct. at 2032, 29 L.Ed.2d at 576; *Brauch, supra; State v. Johnson,* 110 Idaho 516, 522, 716 P.2d 1288, 1294 (1986). If the government fails to meet its burden, the evidence obtained as a result of the illegal search, including later-discovered evidence derived from the original unlawful search, is inadmissible in court. *Segura v. United States,* 468 U.S. 796, 804, 104 S.Ct. 3380, 3385, 82 L.Ed.2d 599, 608 (1984); *State v. Bainbridge,* 117 Idaho 245, 249, 787 P.2d 231, 235 (1990).

## A. The Initial Entry into the Apartment Was Unlawful.

█ The district court erred with respect to the legality of Officer Miller's first entry into the apartment. There is no exception to the warrant requirement that allows government agents to enter a home solely for the purpose of investigating a nonviolent misdemeanor, *Curl,* 125 Idaho at 225, 869 P.2d at 225, nor is there an "open door" exception. *Abeyta,* 131 Idaho at 707, 963 P.2d at 390 (Ct.App.1998). Officer Miller was not in hot pursuit of a suspect, and he had not initiated an investigative detention of the individual whom he followed into the apartment. *Compare State v. Manthei,* 130 Idaho 237, 939 P.2d 556 (1997). No exigency was presented to justify the officer's initial entry into the apartment without a warrant and without consent. Indeed, the State concedes that the lower court erred in this element of its decision on the motion to suppress. Accordingly, we hold that Officer Miller's first entry into the apartment violated the Fourth Amendment.

## B. The Second Entry Was Made with Consent.

The district court held that Officer Miller's second entry was justified by the apartment renter's consent. Salinas challenges this ruling, arguing that the State's evidence of such consent was inadmissible and that the renter, Gallegos, did not have authority to consent to the search of the bedroom occupied by Salinas. Therefore, he asserts, the State has failed to meet its burden to prove valid consent.

█ Voluntary consent for a search from a person who has actual authority to consent obviates the need for a warrant. *United States v. Matlock,* 415 U.S. at 170, 94 S.Ct. at 992, 39 L.Ed.2d at 249; *Brauch, supra; Johnson,* 110 Idaho at 522, 716 P.2d at 1294; *Ham,* 113 Idaho at 406, 744 P.2d at 134. Actual authority can exist where there is common authority over the premises arising from "mutual use of the property by persons generally having joint access or control for most purposes," as in the case of married couples or co-tenants. *Matlock,* 415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7, 39 L.Ed.2d at 249 n. 7. *See also Brauch, supra; State v. Huskey,* 106 Idaho 91, 93, 675 P.2d 351, 353 (Ct.App.1984). If a person consenting to a search does not have actual authority, but government agents reasonably believe that the person possesses authority, a warrantless search conducted in reliance on the consent is valid. *Illinois v. Rodriguez,* 497 U.S. 177, 188–89, 110 S.Ct. 2793, 2801–02, 111 L.Ed.2d 148, 161–62 (1990); *Brauch, supra; State v. Hawkins,* 131 Idaho at 400, 958 P.2d at 26.

### 1. Evidence of consent

█ The only evidence of consent in this case was Officer Miller's testimony that Gallegos had asked for his help to "remove all the people that were in her apartment," prior to his second entry into the residence. Salinas unsuccessfully objected that this testimony was hearsay, and he advances that argument again on appeal.

Salinas' position is without merit. Hearsay is an out-of-court statement "offered in evidence to prove the truth of the matter asserted." Idaho Rule of Evidence 801(c). A "statement" within the meaning of this rule, is "(1) an oral or written assertion or (2) non-verbal conduct of a person, if it is intended by the person as an assertion." I.R.E. 801(a). Hence, in order to constitute hearsay, a statement must be an assertion of fact and it must be offered by the proponent for the purpose of proving the truth of the assertion. *State v. Gomez,* 126 Idaho 700, 704, 889 P.2d 729, 733 (Ct.App.1994).

Here, Gallegos' out-of-court comment to which Officer Miller testified does not meet either of these criteria. It was not a statement of fact but a request, and since it contained no assertion of any fact, it could not have been offered for the truth of the matter "asserted." Rather, evidence of this out-of-court comment was presented to show that words of consent had been spoken to and heard by the police officer. Its relevance was to demonstrate that Officer Miller reasonably believed that he had received the consent of the renter to enter the apartment.[2] Where, as here, the out-of-court declaration is not offered for its truth, the hearsay rule has no application. *See State v. Ortega*, 95 Idaho 239, 241, 506 P.2d 466, 468 (1973); *Herrick v. Leuzinger*, 127 Idaho 293, 299 n. 1, 900 P.2d 201, 207 n. 1 (Ct.App.1995); *State v. Brooks*, 103 Idaho 892, 899, 655 P.2d 99, 106 (Ct.App.1982). Therefore, the district court correctly admitted the officer's testimony. Because the testimony regarding the renter's request was properly admitted, the State met its burden to prove that the officer entered the apartment with consent.

## 2. Authority to consent to enter the bedroom

■ Salinas also asserts that the consent from Gallegos, the renter of the apartment, did not encompass the bedroom where Salinas and Daniel were sleeping. He notes that he and Daniel had moved into the apartment,[3] and contends that Gallegos consequently had no authority to consent to entry of the bedroom they occupied. However, Salinas has not cited any authority in support of this proposition that there was some limit on the scope of Gallegos' consent or on the scope of her authority to consent to the officer's entry into portions of the apartment. Therefore, this Court will not address the merits of his argument. *State v. Zichko*, 129 Idaho 259, 923 P.2d 966 (1996); *State v. Li*, 131 Idaho 126, 952 P.2d 1262 (Ct.App.1998).

## 3. Alleged taint from the illegality of the first entry

Salinas next argues that even if the second entry by Officer Miller was lawful, the evidence was still subject to suppression. He contends that the State did not establish that Officer Miller's seizure of evidence from the bedroom on his second entry was untainted by his illegal first entry into the apartment. Salinas asserts that because the initial entry was unlawful and because the officer might have seen the contraband on his first trip into the apartment, the evidence seized on his subsequent entry should be suppressed.

■ The exclusionary rule applies to bar the government's use at trial of indirect as well as direct products of unlawful police conduct. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *State v. Cook*, 106 Idaho 209, 222, 677 P.2d 522, 535 (Ct.App.1984). However, suppression of evidence is not required unless the evidence was in some sense the fruit of the illegal governmental activity. *Segura*, 468 U.S. at 815, 104 S.Ct. at 3390, 82 L.Ed.2d at 615; *State v. Hoak*, 107 Idaho 742, 749, 692 P.2d 1174, 1181 (1984). *See also State v. Yeates*, 112 Idaho 377, 382, 732 P.2d 346, 351 (Ct.App.1987).

■ Thus, in the present case, suppression could be appropriate only if Officer Miller gained knowledge of the drugs and paraphernalia as a result of his first, unlawful entry. The evidence in the record is to the contrary. Notwithstanding Salinas' assertions that there are factual discrepancies between Officer Miller's police report, his preliminary hearing testimony, and his suppression hearing testimony regarding when he discovered the evidence, we conclude that, when read in context and in totality, Officer Miller's testimony is consistent. He consistently stated that on his first entry he could see the sleeping Salinas and Daniel through the open bedroom door but that he did not enter the bedroom nor see the drugs and paraphernalia until his second en-

---

**2.** It is also worth noting that, because the declaration was not an assertion, its probative value does not depend upon the credibility of the declarant, Gallegos.

**3.** According to Salinas' testimony, he and Daniel had been staying at the apartment for two days before the arrest. He acknowledged that he had paid no rent, and testified that he had no knowledge as to whether Daniel was paying rent.

try when he went to the bedroom to remove Salinas and Daniel pursuant to Gallegos' request.[4] Hence, the State showed that the acquisition of the challenged evidence was untainted by Officer Miller's unlawful initial entry.

### C. Salinas Did Not Preserve the Right to Appeal His Claim That He Was Denied the Right to a Speedy Trial.

Finally, Salinas argues that his constitutional and statutory rights to a speedy trial were denied by the lower court. This issue has been waived, however, by his guilty plea. A guilty plea ordinarily constitutes a waiver of all nonjurisdictional defects in the proceedings. *State v. Kelchner*, 130 Idaho 37, 39, 936 P.2d 680, 682 (1997);*State v. Book*, 127 Idaho 352, 354, 900 P.2d 1363, 1365 (1995). A defendant may, with the agreement of the prosecution, enter a conditional guilty plea pursuant to Idaho Criminal Rule 11(a)(2), reserving the right to appeal *specified* adverse rulings of the trial court. Salinas entered into such an agreement, specifically reserving his right to appeal the district court's denial of his suppression motion. However, the plea agreement did not mention or preserve any right to raise on appeal a violation of Salinas' speedy trial rights. Because this issue was not reserved in Salinas' plea agreement, we will not reach the merits of the speedy trial claim.

### III.

### CONCLUSION

Although the district court erred in determining that the officer's initial entry into the apartment was legal, the second entry was lawful because it was made with the consent of the apartment renter. Salinas' challenges to the finding of consent are without merit, and he has failed to preserve the right to raise a speedy trial claim on appeal. The order denying Salinas' suppression motion and the judgment of conviction are therefore affirmed.

Chief Judge PERRY, and Judge Pro Tem CARLSON, concur.

---

**4.** On one occasion at the suppression hearing, Officer Miller responded affirmatively when asked whether he saw the paraphernalia prior to speaking with Gallegos. However, the officer immediately retracted the answer, explaining that he had been mixed up as to whether the questioning attorney was referring to Gallegos or to Daniel.