117 P.3d 135

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Michael Jordan HARRIS, Defendant–Appellant.**

No. 29805.

Court of Appeals of Idaho.

April 18, 2005.

Review Denied Aug. 4, 2005.

Molly J. Huskey, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

GUTIERREZ, Judge.

Michael Jordan Harris appeals from his judgment of conviction and sentences for trafficking in methamphetamine and conspiracy to traffic in methamphetamine. We affirm.

## I.

### FACTUAL AND PROCEDURAL SUMMARY

According to the state's evidence at trial, Harris and Greg Kelly were involved in an ongoing operation to import methamphetamine into Idaho through their long-distance trucking occupations. On or about Septem-

ber 12, 2002, Kelly and Harris arrived in Idaho Falls from California in a semi-truck. They brought with them methamphetamine that they weighed and packaged at an apartment rented by Kelly. Kelly arranged the sale, on September 13, of three ounces of the methamphetamine for $3,000 to two people who, unbeknown to Kelly, were respectively a confidential informant for the police and a special agent of the Drug Enforcement Agency (DEA). Harris then delivered the methamphetamine to the informant and the undercover officer in the parking lot of a grocery store in Idaho Falls.

The state charged Harris with one count of trafficking in methamphetamine pursuant to I.C. § 37-2732B(a)(4)(A) and one count of conspiracy to traffic in methamphetamine pursuant to I.C. §§ 37-2732B(a)(3)(A) and 37-2732B(b). Harris filed a motion *in limine* to exclude evidence relating to a note that Kelly had given to his girlfriend, Stephanie Taylor, after his arrest and while incarcerated. The district court determined that the note was an attempt by Kelly to convince Taylor to conceal from the police any information she had concerning the conspiracy and that therefore the note was admissible, pursuant to I.R.E. 801(d)(2)(E), as a co-conspirator's statement. At trial, Taylor testified concerning the note, and it was admitted into evidence.

Harris presented the testimony of four witnesses regarding his whereabouts on September 12 and September 13, 2002. Two California businessmen testified that Harris was in California on both of these days working for them at their respective businesses. Harris's wife and daughter also testified that Harris was with them in California on the dates in question. Harris testified in his own defense, claiming to have been in California on September 12 and 13.

The state presented evidence contradicting Harris' alibi defense. Taylor gave detailed testimony of Harris' involvement in the controlled purchase by the confidential informant and the DEA agent. Taylor testified that Harris left her apartment riding her bicycle on his way to the store parking lot where the controlled purchase took place. The confidential informant who made the exchange identified Harris as the person who rode a bicycle to the parking lot and delivered the drugs. He said that Harris was wearing a red shirt. While the DEA agent could not see Harris' face during the controlled purchase, he watched the exchange occur between the confidential informant and a man on a bicycle who was wearing a red shirt.

After trial, the jury found Harris guilty on both counts. The district court imposed concurrent unified sentences of fifteen years with five years determinate. Harris appeals.

## II.

## ANALYSIS

### A. Admissibility of Note

■ Harris asserts that the district court abused its discretion in admitting the note written by Kelly to Taylor following their arrest. The note stated:

> Baby I don't know what they told you but *I'm not married they want you to talk.* I was not here on the 13th of Sept. and you me or Mike did not have or due anything you know this you know who did what they did they ask you. You said they know everything what did they ask you stick with Starla only ask for a bond reduction so I can get you out you can get me and Mike out Shorty got us in here and Finis work with that I love you with all my heart

■ The trial court has broad discretion in determining the admissibility of evidence. A decision to admit or deny such evidence will not be disturbed on appeal absent a clear showing of abuse of that discretion. *State v. Smith,* 117 Idaho 225, 232, 786 P.2d 1127, 1134 (1990). In the event of an incorrect ruling regarding proffered evidence, a new trial is merited only if the error affects a substantial right of one of the parties. I.C.R. 52; I.R.E. 103(a); *State v. Giles,* 115 Idaho 984, 996, 772 P.2d 191, 203 (1989); *State v. Alger,* 115 Idaho 42, 47–48, 764 P.2d 119, 124–25 (Ct.App.1988).

Hearsay is defined in I.R.E. 801(c) as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of

the matter asserted." *See also State v. Cox,* 136 Idaho 858, 861, 41 P.3d 744, 747 (Ct.App. 2002); *State v. Gomez,* 126 Idaho 700, 704, 889 P.2d 729, 733 (Ct.App.1994).

■ Idaho Rule of Evidence 801(d)(2)(E) excludes from the definition of hearsay a statement by a co-conspirator made during the course and in furtherance of the conspiracy. The scope of the co-conspirator exception is narrow, and the requirement that the co-conspirator's statement be made during the course of and in furtherance of the conspiracy is a prerequisite to admissibility that must be scrupulously observed. *Krulewitch v. United States,* 336 U.S. 440, 443–44, 69 S.Ct. 716, 718–19, 93 L.Ed. 790, 794–95 (1949). There can be no furtherance of a conspiracy that has ended. *Lutwak v. United States,* 344 U.S. 604, 617–18, 73 S.Ct. 481, 489–90, 97 L.Ed. 593, 603–04 (1953). A conspiracy ends for purposes of this rule when the objective of the conspiracy has been achieved or the conspirators terminate their joint efforts. *See generally State v. Caldero,* 109 Idaho 80, 705 P.2d 85 (Ct.App. 1985).

■ It is well settled under federal law that co-conspirator statements made after the conspirators attain the object of the conspiracy are not admissible under this exception unless the proponent demonstrates an express original agreement among the conspirators to continue to act in concert in order to cover up, for their own self-protection, traces of the crime after its commission. *Grunewald v. United States,* 353 U.S. 391, 404, 77 S.Ct. 963, 973, 1 L.Ed.2d 931, 943 (1957). It is also well settled that secrecy plus overt acts of concealment do not establish an express agreement to act in concert in order to conceal the crime. *Grunewald,* 353 U.S. at 403, 77 S.Ct. at 973, 1 L.Ed.2d at 942. Admission of hearsay statements on this basis would impermissibly expand the narrow scope of the co-conspirator exception and further dilute the general prohibition against hearsay statements. *See Krulewitch,* 336 U.S. at 444, 69 S.Ct. at 718, 93 L.Ed. at 794 (holding that statements aimed at preventing detection and punishment were not admissible under the co-conspirator exception because admission of such statements would expand exception to hearsay rule to include declarations made not in furtherance of conspiracy charged, but made in furtherance of an alleged implied but uncharged conspiracy aimed at preventing detection and punishment). As the United States Supreme Court articulated in *Grunewald v. United States:*

> [A] subsidiary conspiracy to conceal may not be implied from circumstantial evidence showing merely that the conspiracy was kept a secret and that the conspirators took care to cover up their crime in order to escape detection and punishment.... Acts of covering up, even though done in the context of a mutually understood need for secrecy, cannot themselves constitute proof that concealment of the crime after its commission was part of the initial agreement among the conspirators.... [E]very conspiracy will inevitably be followed by actions taken to cover the conspirators' traces. Sanctioning the Government's theory would for all practical purposes wipe out the statute of limitations in conspiracy cases, as well as extend indefinitely the time within which hearsay declarations will bind co-conspirators.

*Grunewald,* 353 U.S. at 401–02, 77 S.Ct. at 972–73, 1 L.Ed.2d at 942.

The Colorado Supreme Court adopted this view in *Villafranca v. People,* stating:

> Not every conspiracy continues beyond the time of the occurrence of the crime that is the object of the conspiracy. There must be some specific evidence of a plan or agreement of concealment to demonstrate the pendency of the conspiracy at the time the statements were made.

*Villafranca v. People,* 194 Colo. 472, 474, 573 P.2d 540, 542 (1978).

■ This Court has previously determined that Idaho's adoption of the Idaho Rules of Evidence established a preference for the *Grunewald* rule. *Caldero,* 109 Idaho at 86, 705 P.2d at 91. In *Caldero,* this court stated:

> The counterpart federal rule of evidence is identical. It logically follows that the federal limitation upon extrajudicial statements by co-conspirators, which excludes statements made during the "concealment phase" of a conspiracy, should now apply

in Idaho. Indeed, this implication is emphasized in the commentary to I.R.E. 801(d). *Caldero,* 109 Idaho at 87, 705 P.2d at 92. This Court noted that while the state of the law in Idaho prior to the adoption of Rule 801(d) may have allowed the admission of statements made to conceal the conspiracy, the comments to Rule 801(d) state that the new rule would change the Idaho law on this point. *Caldero,* 109 Idaho at 87, 705 P.2d at 92. Therefore, we conclude that statements of co-conspirators regarding a conspiracy that has already ended in an attempt to conceal such conspiracy are not admissible except in two situations. First, such statement will be admissible where the proponent demonstrates that the attempt to conceal is part of the express original agreement among the conspirators to continue to act in concert in order to cover up, for their own self-protection, traces of the crime after its commission. Second, such a statement will be admissible where the proponent demonstrates that the attempt to conceal is the objective of a separate, express agreement between the conspirators subsequent to the completion of the original conspiracy, in which the conspirators agree to act in concert in order to cover up, for their own self-protection, traces of the crime after its commission. In the latter situation, evidence of the first conspiracy is not a sufficient foundation for the admission of a co-conspirator's statement; rather, at the time of an offer of the statement, there must be some evidence of a conspiracy, or an offer of proof of its existence, sufficient to permit the trial court to reasonably infer that a conspiracy to conceal existed. *See State v. Jones,* 125 Idaho 477, 485, 873 P.2d 122, 130 (1994).

Applying these principles to the facts of this case, we conclude that the note was not covered by Rule 801(d)(2)(E). The conspiracy to traffic in methamphetamine had come to an end prior to Taylor's receipt of the note. The objective of the conspiracy charged was to complete a sale of three ounces of methamphetamine for $3,000, an objective achieved upon delivery of the methamphetamine to the undercover agent. Any statements made beyond its completion were not in furtherance of the charged conspiracy. The state did not attempt to introduce the note into evidence as a statement of a co-conspirator to the specific conspiracy of concealing the original conspiracy of trafficking in methamphetamine. Therefore, the district court erred in admitting the note pursuant to I.R.E. 801(d)(2)(E).

Where a ruling in a criminal case is correct, though based upon an incorrect reason, it still may be sustained upon the proper legal theory. *State v. Pierce,* 107 Idaho 96, 102, 685 P.2d 837, 843 (Ct.App. 1984). Here, the district court erred in ruling that the note was admissible as a co-conspirator's statement. We therefore examine whether the note was otherwise admissible as nonhearsay. As noted above, hearsay is defined as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. I.R.E. 801(c). A "statement" is defined as an oral or written assertion or nonverbal conduct intended as an assertion. I.R.E. 801(a); *State v. Salinas,* 134 Idaho 362, 365, 2 P.3d 747, 750 (Ct.App.2000). It follows then, that to constitute hearsay, an utterance must first be an assertion of fact and second, it must be offered for the purpose of proving the truth of that asserted fact. *Salinas,* 134 Idaho at 365, 2 P.3d at 750; *Gomez,* 126 Idaho at 704, 889 P.2d at 733. These criteria reflect the purpose of the hearsay rule, which is to assure that testimony presenting assertions can be tested by cross-examination of the person making the assertion. *See State v. McPhie,* 104 Idaho 652, 655, 662 P.2d 233, 236 (1983); *Isaacson v. Obendorf,* 99 Idaho 304, 309, 581 P.2d 350, 355 (1978). "When conduct or statements are not assertive or when they are assertive but are not used to prove the truth of the matter asserted, the statement should generally not be treated as hearsay because it does not fit the literal definition and because under these circumstances the danger of insincerity is usually significantly reduced." McCormick On Evidence, § 246 (2003).

While the note is an out-of-court statement, it was not offered by the state to prove the truth of any matter asserted in it. The note contains several assertions including,

e.g., "I'm not married," "I was not here on the 13th of Sept. and you me or Mike did not have or due anything," and "I love you with all my heart." The note was not offered to prove any of these. Most particularly, it was not offered to prove that Kelly was not in Idaho Falls on September 13 or that he and Harris didn't "due anything." In fact, it was offered by the state to prove the opposite. The note was offered to show that Harris was attempting to cover up the crime by dissuading Taylor from divulging information to police. The note was not, therefore, hearsay and was admissible under this theory.

## B. Excessive Sentences

█ Next, Harris asserts that, given any view of the facts, his concurrent unified sentences of fifteen years, with five years determinate, are excessive. Specifically, Harris contends that his sentences were excessive because the jury found that he was involved in the conspiracy but not that he set up the drug deal. Harris also argues that despite the fact that he has a criminal history, he had not been convicted of an offense for twelve years prior to the current conviction. Harris believes that the statutory minimum sentence of three years for each of the offenses would have been appropriate under the circumstances.

█ An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct.App.2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case. *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App. 1982). Where an appellant contends that the

sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct.App.1982).

The record indicates that the district court considered the seriousness of the offenses, the protection of society, deterring Harris from future offenses and the possibility of rehabilitation when sentencing Harris. The district court recognized that Harris had not served time in prison since 1992, but that he had served two previous prison terms for involvement in the drug trade. Harris had served a three-year and an eighteen-month sentence and the district court observed that those sentences had not been enough to deter him from committing additional drug-related crimes. The district court also noted that, regardless of the level of Harris' involvement with Kelly, he had been convicted of serious crimes with a significant impact on society. Harris' sentences cannot be considered unreasonable in light of the facts involved in this case. The district court did not, therefore, abuse its discretion in sentencing Harris to concurrent unified sentences of fifteen years with five years determinate.

## III.

## CONCLUSION

For the above stated reasons, we affirm Harris's judgment of conviction and sentences for trafficking in methamphetamine and conspiracy to traffic in methamphetamine.

Chief Judge PERRY and Judge LANSING concur.