**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 47778**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Opinion Filed: October 18, 2021 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) |
| GILBERTO ROMAN-LOPEZ, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Deborah A. Bail, District Judge.

Judgment of conviction for three counts of lewd conduct with a minor under sixteen and two counts of sexual abuse of a child under sixteen, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Justin R. Porter, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Chief Judge

Gilberto Roman-Lopez appeals from his judgment of conviction for three counts of lewd conduct with a minor under sixteen and two counts of sexual abuse of a child under sixteen. Roman-Lopez asserts that the district court erred by admitting two pieces of hearsay evidence during his trial--a drawing prepared by one of the victims and a statement of the investigating officer. Roman-Lopez alleges the errors were not harmless and, alternatively, that they amounted to cumulative error. Additionally, Roman-Lopez argues the district court erred by not redlining or otherwise correcting his presentence investigation report (PSI) after the court accepted his proposed corrections at sentencing. Any error in admitting the drawing was harmless, the statement of the investigating officer was not hearsay, there was no cumulative error, and the district court did not err in declining to redline the PSI. As a result, the judgment of conviction is affirmed.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Roman-Lopez was indicted for three counts of lewd conduct with a minor under sixteen and two counts of sexual abuse of a child under sixteen for alleged conduct perpetrated against two minors, P.R.-R. and K.K. The district court held a jury trial at which K.K., P.R.-R., Roman-Lopez's wife, Detective Turner, and a medical social worker testified.

K.K.'s trial testimony, in part, described that Roman-Lopez's abuse occurred in the living room and bedroom of his home while they watched movies and television. After K.K. described the layout of the living room and bedroom and where in the rooms the abuse occurred, the State sought to introduce a diagram of the rooms that K.K. drew during her CARES interview.[1] Roman-Lopez objected on hearsay grounds to the admission of the drawing, the district court overruled the objection, and the drawing was admitted. Subsequently, P.R.-R. testified to the general layout of Roman-Lopez's home, the specific layout of the living room and bedroom, and where the individuals would sit while watching movies and television together. P.R.-R.'s testimony regarding the layout of Roman-Lopez's home was consistent with K.K.'s testimony.

During Detective Turner's testimony, the State asked him about his initial interview with Roman-Lopez. During this questioning, the State asked if Roman-Lopez told Detective Turner "my wife all the time was telling me, hey, don't watch movies with those guys." Roman-Lopez's counsel objected on the grounds of hearsay and relevance, and the district court overruled the objections.

The jury found Roman-Lopez guilty of all five charges. The district court ordered a PSI to be completed prior to sentencing. At sentencing, the district court noted that it made one correction to the PSI and then asked the parties if there were any additional changes or corrections. The State did not offer additional corrections, but Roman-Lopez noted that he disagreed with the wording of one sentence in the PSI. The district court did not explicitly indicate it accepted Roman-Lopez's change or that it was notating any change to the PSI. Roman-Lopez timely appeals.

---

[1] CARES refers to St. Luke's Children at Risk Evaluation Services. The CARES interview was contemporaneous with the victims' initial disclosures. However, because Roman-Lopez fled from Idaho after his interview with Detective Turner, the trial did not occur until several years after the disclosures were made.

2

# I.

## STANDARD OF REVIEW

Idaho appellate courts review a trial court's evidentiary rulings for an abuse of discretion. *State v. Smalley*, 164 Idaho 780, 783, 435 P.3d 1100, 1103 (2019). The decision whether to strike information from a PSI is also reviewed for an abuse of discretion. *See State v. Molen*, 148 Idaho 950, 961, 231 P.3d 1047, 1058 (Ct. App. 2010). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

# III.

## ANALYSIS

Roman-Lopez alleges the district court erroneously admitted two pieces of evidence that amounted to hearsay during the trial; first, K.K.'s drawing of the layout of Roman-Lopez's living room and bedroom and, second, Detective Turner's testimony concerning Roman-Lopez's statement that his wife told him not to watch movies with the victims. Roman-Lopez argues the admission of this evidence was not harmless and, alternatively, it amounted to cumulative error. Additionally, Roman-Lopez contends the district court erred by not redlining or otherwise correcting the PSI based on the disagreement with one sentence in the PSI that Roman-Lopez noted at sentencing. In response, the State argues that neither piece of evidence amounted to hearsay, any error in admitting the evidence was harmless, and Roman-Lopez failed to establish cumulative error. Finally, the State contends the district court did not abuse its discretion by not redlining or otherwise correcting the PSI.

**A.** **Roman-Lopez Has Failed to Establish Reversible Error as to the Admission of Either Piece of Evidence at Issue**

As an initial matter, Roman-Lopez asks this Court to adopt a new standard of review of a trial court's evidentiary decisions. Roman-Lopez acknowledges that generally the question of whether evidence is admissible at trial is reviewed for an abuse of discretion. Nonetheless, he argues that when the decision to admit evidence involves questions of law, including whether the trial court complied with the Idaho Rules of Evidence, appellate courts should conduct a free review as the Idaho Supreme Court did in *State v. Garcia*, 166 Idaho 661, 462 P.3d 1125 (2020).

Roman-Lopez cites to *State v. Reeder*, 165 Idaho 85, 438 P.3d 782 (Ct. App. 2019) and *State v. Andersen*, 164 Idaho 309, 429 P.3d 850 (2018) as further support for this standard of review. We are not persuaded.

First, we do not read *Garcia* as broadly as Roman-Lopez does. In *Garcia*, the Court addressed, among other issues, whether the district court erroneously admitted some of the victim's wife's testimony. *Garcia*, 166 Idaho at 670, 462 P.3d at 1134. The Court articulated the relevant standard of review as "[t]he question of whether evidence is relevant is reviewed de novo, while the decision to admit relevant evidence is reviewed for an abuse of discretion." *Id.* at 669, 462 P.3d at 1133. The Court concluded the evidence was not relevant and that although the district court erred in admitting the evidence, such error was harmless. *Id.* Thus, the Court did not freely review the district court's decision to admit the evidence. Instead, the Court reviewed the district court's decision to admit the irrelevant evidence using the abuse of discretion standard. As such, to characterize *Garcia* as an example of the Court freely reviewing whether the district court erroneously admitted evidence is overbroad.

Second, Roman-Lopez's argument that *Andersen* and *Reeder* support a free review of the district court's decision to admit evidence in this case is similarly unpersuasive. Neither *Andersen* nor *Reeder* addressed evidence admitted over a contemporaneous objection at trial. In *Andersen*, the issue was whether the district court erred in denying a motion to suppress. As part of that motion, the trial court had to determine whether the defendant was in custody during her interrogation. *Andersen*, 164 Idaho at 313, 429 P.3d at 854. No testimony was presented to the trial court. *Id.* at 311, 429 P.3d at 852. Instead, the parties stipulated to the introduction of the preliminary hearing transcript and a video recording created by the interrogating officer of her contact with the defendant, and both parties agreed the district court could decide the motion based upon briefing that had previously been submitted. *Id.* On appeal, the Idaho Supreme Court recognized the unique circumstances of the case and applied a similarly unique standard of review, only applicable to that precise circumstance:

> This appeal presents the unusual situation where this Court has exactly the same evidence before it as was considered by the district court: the transcript of the preliminary hearing and the video recording of [the officer's] contact with Andersen. In such instance, we do not extend the usual deference to the district court's evaluation of the evidence. Under these limited circumstances, this Court has determined that its role on appeal is to freely review the evidence and weigh the evidence in the same manner as the trial court would do.

*Id.* at 312, 429 P.3d at 853 (internal quotations omitted). Thus, the standard articulated in *Andersen* was explicitly limited to a very narrow circumstance: ruling on a motion to suppress where the appellate court had exactly the same evidence before it as was considered by the trial court. *Id*.

In *Reeder*, we considered factual findings made by the district court after a suppression hearing. *Reeder*, 165 Idaho at 88, 438 P.3d at 785. Recognizing the narrow application of the *Andersen* holding, we declined to extend that standard to a circumstance where the evidence presented in the appellate court was not exactly the same as the evidence presented in the trial court. *Id.* at 89 n.2, 438 P.3d 786 n.2.

The alleged error in this case does not arise as part of a motion to suppress, and we do not have exactly the same evidence as the district court because the district court was presented with live foundational testimony related to the drawing. Consequently, *Andersen* is not controlling or persuasive in this case. Because we see no reason to deviate from the current standard of review for evidentiary issues, we will follow the applicable precedent and the analytical rubric applied by the Idaho Supreme Court in *Garcia*. Under those standards, it is well established that Idaho appellate courts review questions about the admissibility of evidence using a mixed standard of review. *State v. Samuel*, 165 Idaho 746, 772, 452 P.3d 768, 794 (2019); *State v. Sanchez*, 165 Idaho 563, 567, 448 P.3d 991, 995 (2019); *State v. Ehrlick*, 158 Idaho 900, 907, 354 P.3d 462, 469 (2015); *State v. Herrera*, 159 Idaho 615, 620, 364 P.3d 1180, 1185 (2015). Questions that constitute a matter of law are subject to free review, while discretionary determinations are reviewed for an abuse of discretion. *Samuel*, 165 Idaho at 772-73, 451 P.3d at 794-95.

### 1. Admission of the drawing was harmless

Roman-Lopez alleges that because K.K. drew the diagram of Roman-Lopez's home during her CARES interview and the State admitted it for the truth of the matter asserted, it constituted impermissible hearsay and the district court erred by admitting it over his objection.

Hearsay is defined as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. I.R.E. 801(c); *State v. Gomez*, 126 Idaho 700, 704, 889 P.2d 729, 733 (Ct. App. 1994). Hearsay is inadmissible unless otherwise provided by an exception in the Idaho Rules of Evidence or other rules of the Idaho Supreme Court. I.R.E. 802. "The trial court has broad discretion in deciding whether to admit hearsay evidence under one of the exceptions, and this Court will not overturn an exercise of that discretion absent a clear showing of abuse." *Losee v. Deutsche Bank Nat'l Tr. Co.*, 165

Idaho 883, 885, 454 P.3d 525, 527 (2019); *cf. Sanchez*, 165 Idaho at 567, 448 P.3d at 995; *State v. Stanfield*, 158 Idaho 327, 331, 347 P.3d 175, 179 (2015).

However, error in the admission of evidence will not result in a reversal if the error was harmless beyond a reasonable doubt. *Gomez*, 126 Idaho at 705, 889 P.2d at 734. The Idaho Supreme Court clarified the harmless error standard for an objected-to, non-constitutionally based error in *Garcia*. This standard requires weighing the probative force of the record as a whole while excluding the erroneous evidence and at the same time comparing it against the probative force of the error. *Garcia*, 166 Idaho at 674, 462 P.3d at 1138. The reviewing court must take into account what effect the error had, or reasonably may have had, on the jury in the context of the total setting and in relation to all else that happened, which necessarily includes the evidence presented. *Kotteakos v. United States*, 328 U.S. 750, 764 (1946).

We need not decide whether the drawing was hearsay because even if it was erroneously admitted, any error was harmless. Prior to the admission of the drawing, both K.K. and P.R.-R. provided testimony, without objection from Roman-Lopez, that described the rooms in Roman-Lopez's house where they would watch movies and television and where in the rooms individuals would sit when Roman-Lopez's conduct would occur. Although Roman-Lopez challenges the content of the drawing, testimony regarding the content was otherwise established by admissible and unchallenged evidence during the trial. Therefore, when weighing the probative force of the drawing against the record as a whole, excluding the drawing, we cannot say that the error had any effect on the jury in the context of the total setting and in relation to all else that happened during the trial. Therefore, even assuming the drawing constituted impermissible hearsay such that its admission into evidence was error, any error was harmless.

### 2. Detective Turner's testimony was not hearsay

Pursuant to I.R.E. 805, each part of a hearsay-within-hearsay statement must conform to a hearsay exception in order to be admissible. Roman-Lopez alleges the district court erred by allowing, over his objection, Detective Turner to offer hearsay-within-hearsay testimony regarding a statement Roman-Lopez made to Detective Turner during an interview. The challenged testimony related to the State's assertion that Roman-Lopez told Detective Turner during the interview "my wife all the time was telling me, hey, don't watch movies with those guys." Roman-Lopez acknowledges that as a statement of a party-opponent, his statement to Detective Turner was an exception to the hearsay rule. However, Roman-Lopez argues that under a hearsay-within-

6

hearsay analysis, Roman-Lopez's wife's instruction to Roman-Lopez to not watch movies with K.K. and P.R.-R. was hearsay without an exception.

The challenged testimony occurred during the direct examination of Detective Turner:

| | |
|---|---|
| State: | Okay. And regarding the playing with [K.K.] and [P.R.-R.], did [Roman-Lopez] say, quote, my wife all the time was telling me, hey, don't watch movies with those guys? |
| Defense: | Objection; hearsay relevance. |
| Court: | What's the-- |
| Defense: | Double hearsay, I guess, within the State's exception. |
| State: | It's a quote from the defendant regarding him watching movies with [K.K.] and [P.R.-R.]. |
| Court: | Overruled. |
| State: | And so-- |
| Det. Turner: | Yes, he did say that. |
| State: | And based on your understanding, he knew that he thought his wife thought it was inappropriate? |
| Defense: | Objection; speculation. |
| Court: | Sustained. |
| State: | How did you interpret that comment? |
| Defense: | Objection; relevance, speculation. |
| Court: | Sustained. |
| State: | Thank you, Detective. I don't have any further questions. |

"To constitute hearsay, an utterance must first be an assertion of fact and second, it must be offered for the purpose of proving the truth of that asserted fact." *State v. McDonald*, 141 Idaho 287, 288, 108 P.3d 434, 435 (Ct. App. 2005). In *McDonald*, we held that verbal instructions, commands, or requests cannot be admitted for the truth of the matter asserted because they are incapable of being proved true or false; accordingly, they are not hearsay. *Id.* at 288-89, 108 P.3d 435-36. In that case, Officer Richards and Officer Hancuff suspected McDonald of driving under the influence. *Id.* at 287, 108 P.3d at 434. Officer Richards performed sobriety tests on McDonald and, after failing the tests and refusing to provide a breath sample, McDonald was charged with driving under the influence. *Id.* By the time of trial, Officer Richards was no longer with the police department and was not called to testify. *Id.* at 288, 108 P.3d at 435. Rather, the State presented evidence concerning the field sobriety tests through Officer Hancuff:

| | |
|---|---|
| State: | How was the test performed on Mr. McDonald that evening? |
| Off. Hancuff: | It was--initially, the subject was placed in the position, instructed to look at a stimulus, instructed how to submit to this test, specifically, holding his head stationary and watching the stimulus as it went-- |
| . . . . | |

7

> State:            Did Officer Richards comply with the standardized practice . . . of instructions with regard to the horizontal gaze nystagmus test?
>
> . . . .
>
> Off. Hancuff:  Yes.

*Id.* McDonald made a hearsay objection to Officer Hancuff's testimony about Officer Richards' instructions to McDonald for the field sobriety tests, but the district court overruled the objection. *Id.* On appeal, this Court analyzed Officer Hancuff's testimony referencing the instructions given to McDonald during the sobriety tests. *Id.* We clarified the term "statement" in the definition of hearsay, explaining:

> A "statement" is defined as an oral or written *assertion* or nonverbal conduct intended as an *assertion.* I.R.E. 801(a); *State v. Salinas,* 134 Idaho 362, 365, 2 P.3d 747, 750 (Ct. App. 2000). It follows then, that to constitute hearsay, an utterance must first be an assertion of fact and second, it must be offered for the purpose of proving the truth of that asserted fact.

*Id.* Ultimately, we held the officer's "verbal directions to McDonald were not assertions of fact and could not be offered 'to prove the truth of the matter asserted.'" *Id.* Accordingly, the challenged instructions were not hearsay and, therefore, the district court did not err by admitting the testimony. *Id.* at 289, 108 P.3d at 434.

Roman-Lopez argues that *McDonald* does not apply to Detective Turner's testimony because it does not matter whether an utterance is a statement or command, the purpose for which the testimony is offered controls whether it is hearsay. In this case, he contends that this Court can determine the truth of the matter asserted by Detective Turner's statement about Roman-Lopez's wife's instruction through the State's reliance on the instruction in its closing argument.

In arguing that *McDonald* does not control the outcome of this case, Roman-Lopez cites *State v. Hill*, 161 Idaho 444, 448-49, 387 P.3d 112, 114-15 (2016) and asserts in his reply brief:

> In fact, the Supreme Court decided *Hill* on review from the Court of Appeals. *See Hill*, 161 Idaho at 447. The Court of Appeals had previously held the statement was not hearsay based, in part, on *McDonald*. *State v. Hill*, 2015 WL 9460229, \*\*2-3 (Ct. App. 2015). As such, the Supreme Court's decision in *Hill* implicitly rejected the application of *McDonald* to this sort of situation.

Presumably, the "sort of situation" to which Roman-Lopez refers is a situation where an utterance is instructional rather than an assertion of fact. We are not persuaded. Contrary to Roman-Lopez's assertion, this Court did not hold the statement in *Hill* was not hearsay; rather, we explicitly held the statement was hearsay. Additionally, the Idaho Supreme Court did not implicitly reject the application of *McDonald* in its *Hill* opinion because the issue was not addressed.

First, unlike the utterance in *McDonald*, the statement at issue in *Hill* was not an instruction or command, but was instead a factual assertion relied upon for the truth of the content of the statement. In *Hill*, after conducting a traffic stop, Deputy Smith suspected Hill was drinking. *Hill*, 161 Idaho at 446, 387 P.3d at 114. Deputy Smith performed field sobriety tests and determined that Hill was impaired. *Id.* Hill was arrested for driving under the influence. *Id.* Deputy Smith testified during the jury trial. *Id.* During the State's direct examination of Deputy Smith regarding one of the tests performed, the following exchange took place:

> Dep. Smith: And if they have vertical nystagmus, we were taught in the academy that it's generally an indication--
> Defense: Objection. Hearsay
> Court: Overruled. You can continue. You can continue, I'm sorry.
> Dep. Smith: Okay. We are taught in the academy that if--if it's vertical nystagmus, it's generally an indicator of over a certain level, which is generally .10, is what I was taught.

Contrary to Roman-Lopez's argument, in *Hill* this Court did not rely on *McDonald* to conclude Deputy Smith's testimony regarding the relationship between vertical nystagmus and a blood alcohol concentration was not hearsay. Instead, our *Hill* opinion cited *McDonald* for the definition of hearsay and then held:

> *In this case, the deputy's testimony was hearsay and was improperly admitted.* The deputy testified about an out-of-court statement, his assertion about what he was taught at the police academy, and this testimony was relied upon by the State for the truth of the matter asserted--that the presence of vertical nystagmus indicated a blood alcohol level of .10 or greater. The district court overruled the objection and erred in allowing this testimony to be admitted.

*State v. Hill*, Docket No. 42553 (Ct. App. Dec. 24, 2015) (unpublished opinion) (emphasis added). As such, Roman-Lopez's articulation of our reliance on *McDonald* in *Hill* was incorrect.

Ultimately, this Court concluded that although the district court erroneously admitted the evidence, the error was harmless. While the Idaho Supreme Court accepted review of the case, Roman-Lopez's assertion that the Supreme Court's decision in *Hill* can be read as implicitly rejecting *McDonald*, is unsupported. In contrast to Roman-Lopez's contention, the Court in *Hill* did not cite *McDonald* or address whether an instruction or command can have value as the truth of the matter asserted because the testimony in *Hill* was a factual assertion, not an instruction or command. In *Hill*, none of the parties argued the statement was a command, and neither this Court nor the Supreme Court analyzed the statement as anything other than a factual assertion. *See Hill*, 161 Idaho 444, 387 P.3d 112. On review, the Supreme Court, as did this Court, held the testimony

9

was hearsay. *Id.* at 449, 387 P.3d at 117. Accordingly, Roman-Lopez's contention that *Hill* implicitly rejected *McDonald's* application to the circumstances at issue here is without merit, and his argument that it does not matter whether an utterance is a statement or command under a hearsay analysis is unsupported.

Whether the challenged testimony in this case is hearsay is resolved by *McDonald*. Roman-Lopez's wife's instruction to Roman-Lopez, "hey, don't watch movies with those guys," was a command--a verbal directive to Roman-Lopez to refrain from watching movies with K.K. and P.R.-R. This instruction was not a factual assertion because there was no matter asserted in relation to the command. Without a factual assertion, the statement is not hearsay.

Nonetheless, we must also address Roman-Lopez's argument that regardless of whether an utterance is an assertion, command, or instruction, pursuant to *Hill*, if the utterance is relied upon by the State for the truth of the matter, it is hearsay. Roman-Lopez argues that, because the State relied on Detective Turner's testimony twice in its closing arguments by stating "And then we learned today, that [Roman-Lopez's wife] saw him cuddled up to [K.K.] under a blanket and felt it was inappropriate," and "[Roman-Lopez's wife] walked in on something that made her very uncomfortable," the State relied upon Detective Turner's statement for its truth. Thus, Roman-Lopez argues the command was hearsay. Roman-Lopez's argument is unsupported by the record.

A review of the transcript reveals that neither of the statements about Roman-Lopez's wife made by the State during its closing argument refer to Detective Turner's testimony regarding Roman-Lopez's wife's instruction. Rather, both statements refer to Roman-Lopez's wife's testimony during trial. During that cross-examination, Roman-Lopez's wife described witnessing the following:

| | |
|---|---|
| Defense: | You've never reported any other touching by [Roman-Lopez] prior to today; correct? |
| Roman-Lopez's wife: | I do remember one instance. I left work. I came home. I didn't hear any sound so I went into my daughter's bedroom, and he was lying down with the two girls on the bed. I got really mad. He said I'm crazy, and that I was thinking--like, in my head, I was thinking you were going too far. |
| Defense: | And you've never reported this to police in 2014; correct? |
| . . . . | |
| Roman-Lopez's wife: | I've remembered it now as time has gone by. |
| Defense: | But, yes or no, did you ever report that to the police in 2014? |

10

| | |
|---|---|
| Roman-Lopez's wife: | No. |

. . . .

| | |
|---|---|
| Defense: | So you never saw anyone's private parts? |
| Roman-Lopez's wife: | They were covered up with a blanket. |

On redirect examination, the State clarified:

| | |
|---|---|
| State: | Was he cuddled up to [K.K.] under that blanket? |
| Roman-Lopez's wife: | Yes. |

The State in this case never referenced or relied on Detective Turner's challenged testimony during closing argument or at any time after Detective Turner testified about what Roman-Lopez said his wife told him. Instead, in closing argument, the State specifically relied on Roman-Lopez's wife's testimony that Roman-Lopez was lying on a bed with the girls and he and K.K. were covered by a blanket. Accordingly, the State's closing arguments do not establish that it introduced Detective Turner's testimony for the truth of the matter asserted or for what "truth" the State introduced the testimony.

Roman-Lopez's wife's instruction was not an assertion of fact and was not relied upon by the State for whatever truth the instruction may have asserted. As a result, Roman-Lopez's statement to Detective Turner was an exception to the hearsay prohibition as a statement of a party opponent and Roman-Lopez's wife's instruction to Roman-Lopez was not hearsay. Therefore, each part of Detective Turner's challenged testimony was admissible. Accordingly, the district court did not err by admitting Detective Turner's testimony.

### 3. Even if Detective Turner's testimony was inadmissible hearsay, the error was harmless

Even if Detective Turner's testimony was inadmissible hearsay, any error in its admission was harmless. Roman-Lopez argues the State failed to establish Detective Turner's testimony was harmless because Roman-Lopez's wife testified as a defense witness and, as a result, the "erroneously-introduced evidence presented the jury with one of the defense's own witnesses corroborating the alleged victim's testimony, and this is powerfully probative." Roman-Lopez's statements are inaccurate, as a review of the trial transcript shows Roman-Lopez's wife testified for the State, and we cannot fairly characterize the substance of Roman-Lopez's wife's testimony as so defense-oriented that she could nonetheless be considered a defense witness. Thus, Roman-Lopez's argument regarding the powerfully probative value of Detective Turner's testimony about Roman-Lopez's wife's instruction is without foundation. In weighing the probative weight of Detective Turner's testimony about Roman-Lopez's wife's instruction against the record as a

11

whole, when excluding the testimony, we cannot find that the testimony had any effect on the jury in the context of the total setting and in relation to all else that happened in the trial. Accordingly, even if Detective Turner's challenged testimony was inadmissible hearsay, its admission was harmless.

### 4. Roman-Lopez has not established cumulative error

Roman-Lopez contends that the cumulative error doctrine applies here, necessitating a reversal of his conviction. Under the doctrine of cumulative error, a series of errors, harmless in and of themselves, may in the aggregate show the absence of a fair trial. *State v. Adamcik*, 152 Idaho 445, 483, 272 P.3d 417, 455 (2012). However, a necessary predicate to the application of the doctrine is a finding of more than one error. *Id*. Roman-Lopez has failed to demonstrate at least two errors, a necessary predicate to the application of the cumulative error doctrine. Thus, he is not entitled to reversal under the cumulative error doctrine.

### B. District Court Did Not Err By Not Correcting the PSI

Roman-Lopez alleges the district court erred by not redlining or otherwise correcting the PSI based on his trial counsel's proffered correction during the sentencing hearing. Accordingly, Roman-Lopez requests that we remand the case so that all corrections to the PSI reflected in the record can be properly recorded on the PSI itself.

The rules of evidence are not applicable to a PSI. *State v. Rodriguez*, 132 Idaho 261, 263, 971 P.2d 327, 329 (Ct. App. 1998). The sentencing court, in its discretion, may consider information which would otherwise be inadmissible at trial, such as hearsay, as long as the court believes the information is reliable and the defendant has an opportunity to present favorable evidence and to explain or rebut adverse information. *State v. Carey*, 152 Idaho 720, 721, 274 P.3d 21, 22 (Ct. App. 2012); *see also* I.C.R. 32(e)(1) (noting court may consider reliable, inadmissible information in PSI).

When considering a PSI, the sentencing court has two distinct obligations. *State v. Golden*, 167 Idaho 509, 511, 473 P.3d 377, 379 (Ct. App. 2020). First, the court must reject consideration of inaccurate, unfounded, or unreliable information in the PSI. *Id.*; *see also Carey*, 152 Idaho at 722, 274 P.3d at 23 (noting unfounded, unreliable, or inaccurate information must be rejected); *Molen*, 148 Idaho at 961, 231 P.3d at 1058 (noting court correctly declined to consider unreliable information). Second, the court must redline from the PSI information it is excluding as incorrect or unreliable. *Golden*, 167 Idaho at 511, 473 P.3d at 379. Such redlining protects the defendant

against the future misuse of the unreliable information and provides a clear record for appellate review. *Id.* at 512, 473 P.3d at 380.

The sentencing court is not required to strike or disregard information in the PSI simply because the defendant disputes the information. *Id.* at 511, 473 P.3d at 379; *see also Carey*, 152 Idaho at 722, 274 P.3d at 23 (holding no authority "holds that a sentencing court must strike from a PSI any statement that the defendant disputes"). However, the defendant may present evidence to the sentencing court to support redlining the disputed information during the sentencing hearing. *See Carey*, 152 Idaho at 722, 274 P.3d at 23. For example, the defendant may offer his own rebuttal to the disputed information or subpoena the sources of the disputed information for cross-examination. *Id.* By offering such evidence, the defendant gives the sentencing court sufficient information to make an independent determination on the reliability of the disputed statements. *Rodriguez*, 132 Idaho at 264, 971 P.2d at 330. Ultimately, the sentencing court has the power to determine the reliability of the disputed information and to disregard what it finds irrelevant or unreliable. *Id.*

At the sentencing hearing, after the district court noted that it made one correction to the PSI, the court asked the parties if there were any additional "changes or corrections." While the State did not offer additional corrections, Roman-Lopez took issue with one sentence in the PSI, which stated: "[Roman-Lopez's] appended classification notes reflect he refused to move to the dorms twice, but asked earlier this month to go to a dorm." The PSI included log reports that listed the date and time of the notes and the officers' names and identification numbers who made the notes. Roman-Lopez explained his concerns as follows:

Defense:     Your Honor, Mr. Roman-Lopez has a few disagreements or corrections with the PSI.
            The primary of note that he would like the Court to be aware of is on page 7, and I believe that's under prior record comments, the last few paragraphs above family history. Mr. Roman-Lopez disagrees with the wording and indicates some information about him refusing to be moved to essentially a lower security dorm a few times. He just wants the Court to know that, one, he is in the dorms now. I'm sure the Court is aware, they can see he's an inmate worker. So he's in the more lower security dormitories now. He just indicates that if he was asked to move to the dorms, it was a miscommunication. He was unaware of ever being made that offer when he--immediately when he qualified, he moved to the dorms.
Court:       All right.

13

| Defense: | So he has that correction, and if I may have just one moment to make sure I'm not missing any other major correction at the moment. |
|---|---|

(Brief pause in the proceedings.)

| Defense: | Your Honor, I believe any other issue may be a disagreement with the facts of the case. I think that's our only correction of fact. Thank you. |
|---|---|
| Court: | All right. |

The sentence in the PSI was facially reliable as defined in *Carey*. Although Roman-Lopez "disagree[d] with the wording" of the PSI related to this issue, he provided no further evidence to support his assertion that he did not initially refuse to move to a lower security dorm. The sentencing court is not required to strike or disregard information in the PSI simply because the defendant disputes the information. When information in the PSI is facially reliable, the defendant must provide more evidence than simply his statement disputing the information, *Golden*, 167 Idaho at 511, 473 P.3d at 379 and, thus far, the only information that this Court has indicated must be redlined from a PSI is inaccurate or unreliable information. *See Molen*, 148 Idaho at 961, 231 P.3d at 1058. Here, there is nothing in the record to indicate the information was inaccurate or unreliable except Roman-Lopez's statement that he disagreed with the statement that he declined to move to a dorm and that there may have been a miscommunication about housing options. Without any evidence to show that the statement at issue was unreliable or inaccurate, the district court did not have an obligation to redline the PSI to reflect Roman-Lopez's explanation.

Nonetheless, Roman-Lopez alleges the district court erred in failing to redline his PSI because, just like the sentencing court in *Golden*, "the record indicates the district court *accepted* Mr. Roman-Lopez's corrections at the sentencing hearing" and as a result, *Golden* "controls the analysis." We are unconvinced because Roman-Lopez's record meaningfully differs from that in *Golden*.

In *Golden*, the district court asked Golden if he was aware of any additions or corrections to the PSI. When Golden's counsel stated there were additional corrections to the PSI, the district court replied, "All right. Just let me know which page so I can note the changes on the record." *Golden*, 167 Idaho at 512, 473 P.3d at 380. In response to the district court's request, Golden's counsel identified numerous proffered additions or corrections to the PSI, including that the PSI incorrectly included a charge and acquittal of attempted murder. *Id.* While looking at a copy of the PSI, the district court responded "all right" to each proposed addition or correction Golden's counsel identified. *Id.* After Golden's counsel's comments about the PSI's contents, the State

acknowledged the attempted murder charge and acquittal related to a different individual with the same name. *Id.* However, the PSI in the appellate record did not reflect that the district court made any changes to the PSI. *Id.* This Court held that it was clear from the record that the district court intended to redline certain information in the PSI, yet the appellate record did not reflect these changes. *Id.* Accordingly, we remanded to ensure the district court's additions or corrections were reflected on Golden's PSI and that the corrected PSI is the one distributed per Idaho Criminal Rule 32(h). *Id.* at 513, 473 P.3d at 381.

Here, unlike in *Golden*, the appellate record does not support a conclusion that the district court accepted Roman-Lopez's proposed change. The district court did not indicate that it would note Roman-Lopez's changes in the record, the State did not agree with Roman-Lopez's proffered change, and there is nothing in the record to suggest that the court's statement, "All right," was an acknowledgement that it was accepting the change. While we agree that in the context of the facts in *Golden*, the words "All right," may indicate the acceptance of a correction, that holding was dependent on the other contemporaneous statements the district court made in that case. We do not have that same context here. Moreover, in this case, the district court completed a document entitled "Order Amending Information in Presentence Report (PSI)," which is appended to the PSI in the appellate record. That document only notes the single correction identified by the district court at the outset of the sentencing hearing regarding Roman-Lopez's citizenship. The absence of any other correction indicates the district court's comment "All right" does not have the same meaning attributed to those words in *Golden*. Nevertheless, Roman-Lopez contends this Court cannot attribute any meaning to the order amending the PSI because the district court "made that correction *prior to* the sentencing hearing." This argument is without merit. The order amending the PSI is dated the same date as the sentencing hearing--not prior to the hearing. Further, when the district court noted the correction it made sua sponte on the order amending the PSI is irrelevant to whether the district court could have noted other corrections on that same order after inviting the parties to identify other "changes or corrections." To suggest, as Roman-Lopez does, that the district court was somehow foreclosed from recording other corrections had it deemed it appropriate to do so is contrary to logic and is unsupported by the record.

Ultimately, Roman-Lopez did not provide any evidence to demonstrate that the facially reliable statement in the PSI was erroneous. Accordingly, the district court did not have an obligation to redline the PSI to reflect Roman-Lopez's explanation. Further, the district court's

15

response of "All right" to Roman-Lopez's correction is insufficient to establish that the court independently determined that Roman-Lopez's recitation of the disputed event rendered the information in the PSI unreliable. Thus, the district court did not err by declining to redline the PSI to reflect Roman-Lopez's proposed correction.

## IV.

## CONCLUSION

Assuming without deciding the admission of the drawing K.K. made during her CARES interview constituted inadmissible hearsay, the admission of the challenged testimony was harmless. Detective Turner's testimony was not inadmissible hearsay, and even if it was, any error in its admission was harmless. Because Roman-Lopez has failed to establish at least two errors, he is not entitled to reversal under the cumulative error doctrine. Finally, the district court did not abuse its discretion by declining to redline Roman-Lopez's PSI. Accordingly, Roman-Lopez has failed to establish any reversible error, and the judgment of conviction is affirmed.

Judge GRATTON and Judge LORELLO **CONCUR**.