# IN THE SUPREME COURT OF THE STATE OF IDAHO

## DOCKET NO. 48193

STATE OF IDAHO,                          )
                                         )
   Plaintiff-Respondent,             )
                                         )      **Boise, June 2021 Term**
v.                                       )
                                         )      **Opinion Filed: October 26, 2021**
DANIELLE MERIDETH GUERRA,                )
                                         )      **Melanie Gagnepain, Clerk**
   Defendant-Appellant.              )
_____)

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. D. Duff McKee, Senior District Judge. Dartanyon Burrows, Magistrate Judge.

The decision of the district court is <u>affirmed in part</u> and <u>reversed in part</u> and <u>remanded</u> to the district court with instructions to vacate the judgment of conviction and thereafter remand to the magistrate court for further proceedings.

Aaron Bazzoli, Canyon County Public Defender, Caldwell, for appellant. David A. Delyea argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

_____

BRODY, Justice.

In a case arising out of the Canyon County magistrate court, Danielle Merideth Guerra appeals the district court's decision affirming a judgment of conviction for driving under the influence of drugs ("DUI"). Guerra contends the magistrate court erred when it denied her motion to set aside the jury verdict under Idaho Criminal Rule 29 or, in the alternative, grant a new trial under Idaho Criminal Rule 34. Further, Guerra argues that the magistrate court erred when making a number of evidentiary rulings. The district court, acting in its appellate capacity, affirmed the magistrate court's rulings and judgment of conviction. Guerra timely appealed the district court's decision to this Court. We affirm in part, reverse in part, and remand the case to the district court with instructions to vacate the judgment of conviction and thereafter remand the

1

case to the magistrate court for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Guerra was stopped by City of Caldwell police officer Randy DeLeon ("Officer DeLeon") after he observed Guerra driving a vehicle with a cigarette in one hand and a cell phone in her other hand. After speaking with Guerra, Officer DeLeon, who is a certified drug recognition expert, suspected Guerra was under the influence of drugs. Officer DeLeon described Guerra as carefree, confused, and "not really quite there." Her eyes were watery, puffy, and bloodshot, and it was difficult for Officer DeLeon to discern what she was talking about at times. Ashes from Guerra's cigarette fell into her lap as she spoke to Officer DeLeon, but she did not react. She had difficulty locating her driver's license, vehicle registration, and insurance information. Guerra stumbled and staggered when she walked to the back of her vehicle to look for her driver's license in the trunk. Further, she informed Officer DeLeon that she had taken Tylenol PM several hours earlier.

Guerra was asked to perform a battery of field sobriety tests. Guerra tested negative for alcohol after Officer DeLeon administered a breathalyzer test but performed poorly on the field sobriety tests; thus, she was transported to the Caldwell Police Department for a drug recognition evaluation. Officer DeLeon found several prescription medication bottles in Guerra's possession. The officer testified at trial that the medication bottles included warnings "to take due caution when operating motor vehicles, heavy equipment, don't mix with alcohol, and be careful on taking the substance with other medications . . . ." Guerra admitted she had taken several medications over a 24-hour period. After completing the drug recognition evaluation, Officer DeLeon concluded that Guerra was under the influence of a central nervous system depressant. Thus, Officer DeLeon, who is also a certified phlebotomist, drew a sample of Guerra's blood for testing by the Idaho State Police laboratory. Guerra's blood sample later tested positive for several drugs, including drugs that depress the central nervous system.

Guerra was charged with driving under the influence of drugs in violation of Idaho Code section 18-8004(1)(a), with enhanced penalties under Idaho Code section 18-8005(4) for a second DUI violation within a ten-year period. In preparation for trial, Guerra requested documents in the State's possession, custody or control intended to be used as evidence at trial. The State responded to the request but did not provide Guerra with a certified copy of the judgment of conviction from her prior DUI.

During discovery, the State timely provided Guerra with Officer DeLeon's phlebotomy certificate. The certificate was issued in April 2013 and did not have an expiration date. After the deadline for discovery, and approximately one month before the August 2019 trial, the State provided Guerra with Officer DeLeon's phlebotomy recertification, which was issued in February 2019.

Guerra filed a motion in limine seeking to exclude any evidence connected to the blood draw performed by Officer DeLeon. She argued, in part, that Officer DeLeon was not qualified to conduct the blood draw under Idaho Code section 18-8003 because the Caldwell Police Department had not adopted a written policy concerning blood draws. The magistrate court denied the motion but ruled that Guerra could challenge the admission of the blood test results at trial.

At Guerra's trial, Officer DeLeon testified that the Caldwell Police Department adheres to the blood draw standards promulgated by the Idaho State Police. Officer DeLeon also testified that it was his opinion, as a drug recognition expert, that Guerra "was under the influence of [central nervous system] depressants and was not able to operate a vehicle safely." Additionally, a toxicologist employed by the Idaho State Police laboratory testified that Guerra's blood sample tested positive for several drugs, including drugs that can result in muscle weakness, dizziness, sleepiness, slurred speech, rigid movements, uncoordinated movements, and confusion.

At the close of the State's case, Guerra moved for a judgment of acquittal under Idaho Criminal Rule 29(a), which the magistrate court denied. While the jury was deliberating, the parties addressed "part two" of the proceedings, which concerned the sentencing enhancement under Idaho Code section 18-8005(4) for a second DUI within ten years. Guerra moved to dismiss part two of the proceedings, if she was convicted in part one, because the State had not previously provided her with a certified copy of the judgment of conviction from her prior DUI. The magistrate court denied Guerra's motion.

The jury found Guerra guilty of driving under the influence of drugs in violation of Idaho Code section 18-8004(1)(a). After the jury returned its verdict, Guerra admitted to the prior DUI conviction but reserved the right to appeal the magistrate court's earlier ruling concerning part two of the proceedings.

Guerra subsequently filed a motion to set aside the jury verdict under Idaho Criminal Rule 29(c)(1) or, in the alternative, grant a new trial under Idaho Criminal Rule 34(a). The

magistrate court denied the motion and subsequently sentenced Guerra to 365 days in jail, suspended the sentence, and placed her on probation for two years.

Guerra appealed to the district court, which upheld the magistrate court's evidentiary rulings and judgment of conviction. Guerra timely appealed the district court's decision to this Court.

## II. STANDARD OF REVIEW

When a district court issues a decision while acting in its intermediate appellate capacity, this Court directly reviews the district court's decision. *State v. Chernobieff*, 161 Idaho 537, 539, 387 P.3d 790, 792 (2016) (quoting *In re Doe*, 147 Idaho 243, 248, 207 P.3d 974, 979 (2009)). This Court reviews the magistrate court record to determine whether: (1) there is substantial and competent evidence to support the magistrate court's findings of fact; and (2) the magistrate court's conclusions of law are consistent with those findings. *Pelayo v. Pelayo*, 154 Idaho 855, 858, 303 P.3d 214, 217 (2013) (quoting *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012)). "If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure." *Id.* This Court does not review decisions rendered by the magistrate court. *State v. Phipps*, 166 Idaho 1, ___, 454 P.3d 1084, 1087 (2019) (quoting *Pelayo*, 154 Idaho at 858, 303 P.3d at 217). Rather, this Court is procedurally bound to affirm or reverse the district court's decision. *Id.*

## III. ANALYSIS

### A. The district court did not err when it upheld the magistrate court's denial of Guerra's motion to set aside the jury verdict or, in the alternative, grant a new trial.

Guerra filed a motion to set aside the jury verdict under Idaho Criminal Rule 29 or, in the alternative, grant a new trial under Idaho Criminal Rule 34. After the magistrate court denied Guerra's motion, Guerra timely appealed to the district court, which affirmed the magistrate court's decision:

> Given the totality of circumstances as described in the foregoing, there was substantial evidence that Ms. Guerra was in physical control of a motor vehicle, that she was impaired in her basic abilities necessary to the control of a motor vehicle, that she had quantities of drugs in her system at the time, as shown by the analysis of her blood and by her own admission, and that the established side effects of the drugs found to be in her system at the time in her system would affect her central nervous system which would affect her ability of drive. A

4

reasonable mind could therefore conclude that the defendant's guilt as to each material element of the offense was proven beyond a reasonable doubt. The decision of the magistrate judge to deny Ms. Guerra's motion to set aside and/or grant a new trial was therefore appropriate and is affirmed.

Guerra contends the district court erred when it upheld the magistrate court's denial of her motion to set aside the jury's verdict. Guerra argues that the State did not prove her impairment was *caused* by an intoxicating substance that affected her ability to drive. Thus, she asserts that "[a] reasonable juror could not have found, beyond a reasonable doubt, that [she] was under the influence of an intoxicating substance that made her unsafe to operate a motor vehicle."

The State argues that the district court did not err when it upheld the magistrate court's ruling because the totality of the evidence shows that Guerra did drive a vehicle under the influence of drugs. The State points to: (1) Guerra's behavior and speech when she was stopped by Officer DeLeon; (2) her poor performance on the field sobriety tests; (3) the results from the drug recognition evaluation by Officer DeLeon; and (4) Guerra's blood test results.

"The trial court may enter a judgment of acquittal pursuant to Idaho Criminal Rule 29 only if the court finds the evidence 'insufficient to sustain a conviction of such offense or offenses.' " *State v. Clark*, 161 Idaho 372, 374, 386 P.3d 895, 897 (2016) (quoting I.C.R. 29(a)). "When reviewing the denial of a motion for judgment of acquittal, the appellate court must independently consider the evidence in the record and determine whether a reasonable mind could conclude that the defendant's guilt was proven beyond a reasonable doubt." *State v. Dix*, 166 Idaho 851, 854, 465 P.3d 1090, 1093 (2020) (citing *Clark*, 161 Idaho at 374, 386 P.3d at 897). "The relevant inquiry is not whether this Court would find the defendant to be guilty beyond a reasonable doubt, but whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Abdullah*, 158 Idaho 386, 425, 348 P.3d 1, 40 (2015) (internal quotation marks omitted) (quoting *State v. Adamcik*, 152 Idaho 445, 460, 272 P.3d 417, 432 (2012)).

A trial court may grant a motion for a new trial on any ground permitted by statute. I.C.R. 34(a). "The denial of a motion for a new trial under Idaho Criminal Rule 34 is reviewed for an abuse of discretion." *State v. Hooley*, 166 Idaho 417, 419, 460 P.3d 341, 343 (2020) (citing *State v. Stevens*, 146 Idaho 139, 144, 191 P.3d 217, 222 (2008)). When an appellate court addresses an

alleged abuse of discretion, it must examine "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018) (citing *Hull v. Giesler*, 163 Idaho 247, 250, 409 P.3d 827, 830 (2018)).

Under Idaho Code section 18-8004(1)(a), "[i]t is unlawful for any person who is under the influence of . . . drugs . . . to drive or be in actual physical control of a motor vehicle within this state." One way to prove a violation of Idaho Code section 18-8004(1)(a) "is to show under the totality of the evidence that the defendant was driving under the influence." *State v. Robinett*, 141 Idaho 110, 112, 106 P.3d 436, 438 (2005). Here, there is substantial evidence that Guerra drove a motor vehicle while under the influence of drugs. As the district court explained:

> The officer's observation of [Guerra's] behavior and her poor performance on the field sobriety tests were sufficient to demonstrate a general impairment of abilities. The expert testimony from both the officer as a [drug recognition expert] and the state technician explained that the drugs affected the central nervous system and could produce uncoordinated or rigid movement, weak muscle strength, dizziness, from which the jury could conclude would impair one's ability to drive. The medications in this case were either [central nervous system] depressants or [central nervous system] stimulants. Defendant's admission of recent use, and the presence of the pills coupled [sic] the officer's explanation of the [drug recognition evaluation] results established the presence of intoxicants. Finally, the blood test confirmed the intoxicants in her system at the time of the arrest.

Accordingly, we conclude that, after viewing the evidence in a light most favorable to the State, a rational jury "could have found the essential elements of the crime beyond a reasonable doubt." *Abdullah*, 158 Idaho at 425, 348 P.3d at 40.

Guerra cites *State v. Stark*, 157 Idaho 29, 333 P.3d 844 (Ct. App. 2013), to support her argument that the State did not prove her impairment was caused by drugs. However, Guerra's reliance on *Stark* is misplaced. In *Stark*, the defendant made an illegal right-hand turn and drove his vehicle the wrong way on a one-way street. *Id.* at 30, 333 P.3d at 845. After Stark performed poorly on three field sobriety tests, the police attempted to conduct a drug recognition evaluation, but Stark was uncooperative. *Id.* Stark did, however, submit to a blood draw. *Id.* A subsequent blood test revealed the presence of Carboxy–THC, which is "not a drug or intoxicating substance but is, instead, a metabolite of marijuana." *Id.* at 32, 333 P.3d at 847. The Court of Appeals held

6

"that the evidence was legally insufficient to prove Stark was under the influence of marijuana." *Id.* "Because the toxicology report indicated the presence of Carboxy–THC, but not THC, it was, in essence, a negative drug test." *Id.* at 33, 333 P.3d at 848. "Although the State proved that Stark was impaired, and that he had used marijuana at some point in the past, the evidence presented by the State was insufficient to prove that Stark's impairment was caused by Stark's past marijuana use." *Id.*

The facts in *Stark* are distinguishable from the facts here. Unlike the defendant in *Stark* who refused to participate in a drug recognition evaluation, Guerra did participate in a drug recognition evaluation. Moreover, Officer DeLeon, who is a drug recognition expert, testified about the results of the drug recognition evaluation at trial. Officer DeLeon stated, for example, that Guerra "was under the influence of [central nervous system] depressants and was not able to operate a vehicle safely." Additionally, unlike the blood test results in *Stark* that did not reveal drugs or other intoxicating substances, the blood test results here did reveal the presence of drugs. More specifically, a toxicologist testified that Guerra's blood sample tested positive for several drugs, including drugs that can result in muscle weakness, dizziness, sleepiness, slurred speech, rigid movements, uncoordinated movements, and confusion. Thus, unlike the facts in *Stark*, the State presented evidence to prove Guerra's impairment was caused by drugs. After viewing the evidence in a light most favorable to the State, a rational jury could have concluded that the State satisfied its burden of proof. *See Abdullah*, 158 Idaho at 425, 348 P.3d at 40.

Guerra also asserts the district court erred when it upheld the magistrate court's decision denying her motion for a new trial under Idaho Criminal Rule 34. Guerra references the magistrate court's denial of her motion for a new trial in her brief and articulates the appropriate standard of review. She does not, however, explain how the magistrate court abused its discretion when it denied her motion for a new trial under Idaho Criminal Rule 34, nor does she explain how the district court erred in affirming this aspect of the magistrate court's decision. Rather, she simply contends that her conviction must be overturned or "[i]n the alternative a new trial must [sic] granted." If an issue is "not supported by any cogent argument or authority, it cannot be considered by this Court." *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010) (citing *Inama v. Boise County ex rel. Bd. of Comm'rs*, 138 Idaho 324, 330, 63 P.3d 450, 456 (2003)). "[T]o the extent that an assignment of error is not argued and supported in compliance with the I.A.R., it is deemed to be waived." *Id.* (citing *Suitts v. Nix*, 141 Idaho 706,

708, 117 P.3d 120, 122 (2005)). Here, Guerra has not provided any argument or authority explaining how the district court erred when it upheld the magistrate court's decision denying her motion for a new trial under Idaho Criminal Rule 34.

In sum, when the evidence is viewed in a light most favorable to the State, a rational jury "could have found the essential elements of the crime beyond a reasonable doubt." *Abdullah*, 158 Idaho at 425, 348 P.3d at 40. We hold, therefore, that the district court did not err when it upheld the magistrate court's denial of Guerra's motion to set aside the jury verdict. Further, because Guerra did not provide any cogent argument or authority explaining how the district court erred when it affirmed the magistrate court's denial of her motion for a new trial, the issue is deemed to be waived.

**B. The district court did not err when it upheld the magistrate court's rulings concerning the timeliness of the State's disclosure of evidence.**

Guerra contends the district court erred when it upheld the magistrate court's rulings concerning the admissibility of two documents that were introduced by the State after the deadline for discovery: (1) a certificate showing that Officer DeLeon had completed requalification training in phlebotomy in 2019; and (2) a certified copy of the judgment of conviction from Guerra's prior DUI.

**1. Officer DeLeon's requalification certificate.**

At trial, the magistrate court overruled an objection from Guerra concerning the admissibility of a certificate showing that Officer DeLeon had completed requalification training in phlebotomy in 2019. The district court affirmed the magistrate court's ruling on appeal: "I find no apparent error in the rulings made by the court below on this issue, and no reason to examine the circumstance further other than to observe that the defense can show no harm or prejudice by the ruling."

Guerra contends the district court erred when it affirmed the magistrate court's ruling concerning the admissibility of the requalification certificate. She argues that, because the certificate was disclosed eight weeks after the deadline for discovery, the magistrate court should have considered sanctions against the State and such "[ ] failure to even consider a penalty to the State is an abuse of discretion."

"The decision whether to impose discovery sanctions is within the discretion of the trial court." *State v. Anderson*, 145 Idaho 99, 104, 175 P.3d 788, 793 (2008) (citing *In re Doe*, 129 Idaho 663, 666, 931 P.2d 657, 660 (Ct. App. 1997)). When an appellate court reviews an alleged

8

abuse of discretion, it utilizes the four-part test set forth in *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

In determining whether to impose a discovery sanction, the trial court "should balance the culpability of the disobedient party against the resulting prejudice to the innocent party." *Anderson*, 145 Idaho at 105, 175 P.3d at 794 (citing *S. Idaho Prod. Credit Ass'n v. Astorquia*, 113 Idaho 526, 532, 746 P.2d 985, 991 (1987)). "Where the question is one of late disclosure rather than failure to disclose, the inquiry on appeal is whether the lateness of the disclosure so prejudiced the defendant's preparation or presentation of his defense that he was prevented from receiving his constitutionally guaranteed fair trial." *State v. Byington*, 132 Idaho 589, 592, 977 P.2d 203, 206 (1999) (quoting *State v. Olsen*, 103 Idaho 278, 283, 647 P.2d 734, 739 (1982)). "The defendant bears the burden of establishing prejudice by showing that there is a reasonable probability that, but for the late disclosure of evidence, the result of the proceedings would have been different." *State v. Pacheco*, 134 Idaho 367, 370, 2 P.3d 752, 755 (Ct. App. 2000) (citation omitted).

Here, the State timely provided Guerra with a copy of Officer DeLeon's initial phlebotomy certificate, which was issued in April 2013. As previously noted, the certificate did not have an expiration date. Eight weeks after the deadline for discovery, and approximately four weeks before trial, the State provided Guerra with Officer DeLeon's requalification certificate, which was issued in February 2019. When the State moved to admit the requalification certificate into evidence at trial, Guerra stated "there would be an objection on the timeliness of the disclosure of this piece of evidence." An off-the-record discussion subsequently took place between the magistrate court and the parties. After that discussion concluded, the magistrate court overruled Guerra's objection but did not elaborate on its reason.

In its decision, the district court observed:

> [T]here is nothing in the record to indicate that the defendant made any showing of prejudice to the trial court. The only objection was as to the timing of the disclosure, and the fact that it came after the cut-off. But the document itself was merely corroboration of the officer's certification, which had been established through other evidence. It was nothing new and added nothing significant to the circumstances already in evidence and undisputed—that the officer was a qualified, certified phlebotomist. Further, there is no dispute that the state passed the document to the defense the date it was received. It was cumulative evidence, merely an additional showing that the witness was qualified to do what he said he could do. In this case, it is not clear that the magistrate found the circumstance to

be a violation of the discovery rule.

Thus, the district court held that the magistrate court did not err when it overruled Guerra's objection.

Having reviewed the record below, we conclude that the magistrate court did not abuse its discretion when it declined to sanction the State for disclosing the requalification certificate eight weeks after the discovery deadline. Moreover, the record does not support the proposition that Guerra was prejudiced by the magistrate court's decision to admit the requalification certificate into evidence. As the district court noted, the requalification certificate was cumulative evidence that merely reinforced that Officer DeLeon was qualified to conduct a blood draw. Finally, the record does not support Guerra's assertion that the magistrate court abused its discretion by failing "to even consider a penalty." Rather, the record shows that Guerra objected to the admission of the requalification certificate and was afforded an opportunity to voice her concerns during a sidebar discussion. It is true that the magistrate court overruled Guerra's objection after the sidebar discussion concluded, but that, without more, does not show that the magistrate court did not "even consider a penalty."

Based on the foregoing, we affirm the district court's decision upholding the magistrate court's ruling.

## 2. Certified copy of the judgment of conviction from Guerra's prior DUI.

At trial, Guerra made a motion to bar part two of the proceedings concerning the sentencing enhancement under Idaho Code section 18-8005(4) because the State had not timely disclosed the judgment of conviction from her prior DUI. After finding there was no prejudice to Guerra, the magistrate court denied the motion. The district court upheld the magistrate court's decision: "[F]rom a legal standpoint, the circumstances presented no cognizable prejudice to the defendant or her case. The decision to allow the admission of the judgment was therefore not an abuse of discretion."

Guerra contends the district court erred when it affirmed the magistrate court's ruling concerning the admissibility of the judgment of conviction. She asserts that the timely disclosure of the document could have helped her form new defenses. Because no sanctions were imposed on the State, she contends the magistrate court abused its discretion.

As previously discussed, decisions concerning discovery sanctions are within the trial court's discretion. *Anderson*, 145 Idaho at 104, 175 P.3d at 793 (citing *In re Doe*, 129 Idaho at

10

666, 931 P.2d at 660). Thus, when an appellate court reviews the trial court's decision, it utilizes the four-prong test delineated in *Lunneborg*, 163 Idaho at 863, 421 P.3d at 194. In the case of a late disclosure, the defendant must show prejudice. *Pacheco*, 134 Idaho at 370, 2 P.3d at 755. Stated differently, the defendant must show that the late disclosure "so prejudiced the defendant's preparation or presentation of his defense that he was prevented from receiving his constitutionally guaranteed fair trial." *Byington*, 132 Idaho at 592, 977 P.2d at 206.

In accordance with Idaho Criminal Rule 16, Guerra requested documents in the possession, custody, or control of the prosecutor that were intended to be used as evidence at trial. The State responded to Guerra's request but did not provide her with a certified copy of the judgment of conviction from her previous DUI. At trial, the prosecuting attorney explained that he had only recently received a certified copy of the judgment of conviction:

> [W]e requested the certified prior on . . . May 24th of this year. We did not get it. We just got it today when I went to look for it and my secretary noticed that, hey, they just sent us the same documents that we already had, that being the same citation and everything else that—for this case, Your Honor. We didn't have it until today. We just got it. She put an ASAP on it from the clerk's office. We just got it then. And it was never in the State's possession, Your Honor. There was no specific request made by the Public Defender's office to get this document. Again, we never had possession of it.

After noting the criminal complaint included information about Guerra's prior DUI, the magistrate court questioned how Guerra could show prejudice:

> [T]his is an official court document. It's a public document. We're talking about a certified copy. Since this case has been charged formally, indicates [sic] that this is a second offense. The predicate part to this charge was that there was a first conviction for DUI. The Defense has been on notice since this charge in this case. I guess what it comes down to for me is I'm struggling to see where the prejudice is to the Defense, whether you would receive this back in May of this year or June of this year or even today, [sic] a certified copy of this judgment.

Guerra responded by stating she was prejudiced in two ways. First, if the magistrate court admitted the judgment of conviction into evidence, she would be subject to increased penalties. Second, she did not have an opportunity to review the judgment of conviction prior to trial. "We have not had the opportunity to look into that everything was done properly in that case. So I mean, I do see prejudice."

The magistrate court overruled Guerra's objection and explained its reasoning:

> So based upon the circumstances of what this charge is in this particular case, I do find that Miss Guerra was on notice that there was a sentencing

11

enhancement to complete this charge. There's a predicate to this offense, a prior DUI within the last 10 years. Defense was on notice of this. As far as all the arguments as far as what the Defense could have looked into or reviewed, the Defense was on notice from the charging document. The fact that the State has a certified copy today rather than handing that over on a prior date, the [c]ourt does not find that there's any prejudice that's been suffered when the Defense has had that notice before today. And this is also [a] court document. It's a public document.

The district court did not err in holding that the magistrate court acted within its discretion by ruling that the judgment of conviction was admissible. The record shows that the magistrate court correctly perceived the issue as one of discretion and acted within the outer boundaries of its discretion. Further, the magistrate court acted consistently with the applicable legal standards by assessing whether the late disclosure of the judgment of conviction prejudiced Guerra and prevented her from receiving a fair trial. *See Byington*, 132 Idaho at 592, 977 P.2d at 206. Finally, as illustrated in the magistrate court's findings, *supra*, the magistrate court reached its decision through the exercise of reason. Because Guerra could not demonstrate prejudice, the magistrate court reasoned there was no basis to grant Guerra's motion to exclude the judgment of conviction.

Based on the foregoing, we affirm the district court's decision upholding the magistrate court's ruling.

**C. The district court did not err when it upheld the magistrate court's ruling admitting evidence connected to the blood draw.**

Guerra filed a motion in limine seeking to exclude evidence relating to the blood draw conducted by Officer DeLeon. She argued, in part, that Officer DeLeon was not qualified to conduct a blood draw under Idaho Code section 18-8003(1). The magistrate court denied Guerra's motion but ruled that she could challenge the admission of the blood test results at trial. During the trial, Guerra did object to the admission of any evidence connected to the blood draw, but her objection was overruled. The district court upheld the magistrate court's rulings: "While the officer here did not work for a medical facility, the trial court found that he did work for an entity that followed the standards established by the Idaho State Police. The magistrate concluded that this was sufficient to comply with [Idaho Code section 18-8003(1)], and I find no error."

Guerra contends the district court erred when it upheld the magistrate court's rulings concerning her motion in limine and her objection at trial: "Since Officer Deleon [sic] does not

meet the definition of a person able to draw blood for evidentiary purposes under Idaho Code § 18-8003, the blood draw was utilized in [c]ourt in violation of the statute." She asserts that "[i]t was abuse of discretion for the Magistrate Court to allow the results of the blood draw to be admitted into evidence . . . [a]nd it was an abuse for the District Court to interpret the statutory language counter to guidance from the Idaho Supreme Court precedent."

"The trial court's decision to admit evidence is reviewed on an abuse of discretion standard." *State v. Field*, 144 Idaho 559, 564, 165 P.3d 273, 278 (2007) (citing *State v. Robinett*, 141 Idaho 110, 112, 106 P.3d 436, 438 (2005)). Appellate courts utilize the four-part test articulated in *Lunneborg* to discern if a trial court has abused its discretion. 163 Idaho at 863, 421 P.3d at 194.

"The interpretation of a statute is a question of law over which this Court exercises free review." *Boyd-Davis v. Macomber L., PLLC*, 157 Idaho 949, 952, 342 P.3d 661, 664 (2015) (quoting *Williams v. Blue Cross of Idaho*, 151 Idaho 515, 521, 260 P.3d 1186, 1192 (2011)). "When interpreting a statute, the Court begins with the literal words of the statute, and where the language of a statute is plain and unambiguous, the Court gives effect to the statute as written, without engaging in statutory construction." *Id.* "If the statute is not ambiguous, this Court does not construe it, but simply follows the law as written." *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 893, 265 P.3d 502, 506 (2011) (quoting *State v. Schwartz*, 139 Idaho 360, 362, 79 P.3d 719, 721 (2003)).

Idaho Code section 18-8003 dictates who may withdraw blood in a criminal matter for the purpose of detecting intoxicating substances:

> Only a licensed physician, qualified medical technologist, registered nurse, phlebotomist trained in a licensed hospital or educational institution or other medical personnel trained in a licensed hospital or educational institution to withdraw blood can, at the order or request of a peace officer, withdraw blood for the purpose of determining the content of alcohol, drugs or other intoxicating substances therein.

I.C. § 18-8003(1). For the purposes of the statute, "the term[] 'phlebotomist' . . . shall be deemed to mean persons who meet the *standards* for the withdrawing of blood as designated and qualified by the employing medical facility or other employing entity of those persons." *Id.* (emphasis added).

Guerra argues that Officer DeLeon is not qualified to withdraw blood under Idaho Code section 18-8003 because there is no evidence that his employer—the Caldwell Police

13

Department—has adopted a written policy pertaining to blood draws:

> The State's response to Defendant's specific request for discovery showed that there was no policy or qualification adopted by the Caldwell Police Department. Yet, Officer Deleon [sic] responded that such a policy exists and that ". . . I would assume the chief has the file saying it." Then Officer Deleon [sic] testified that they "follow the rules set forth with the Idaho State Police . . . ." No evidence was presented that there was an actual policy, that the Idaho State Police have a policy, or that there was any standard for qualifications. The only evidence disclosed was the State's representation to the [c]ourt and Defendant that there was no policy. Officer Deleon [sic] could not even testify as to the wording of a policy, the date of passage, or who designated the policy.

Guerra's argument contains two fallacies. First, she points to the need for a "policy" in order to comply with Idaho Code section 18-8003. The statute, however, does not utilize the term "policy." Rather, the statute employs the term "standards." Second, Guerra strongly implies that any policy must be in writing. That interpretation, however, is not consistent with the plain meaning of the statute. Rather, the statute states that, in order to meet the definition of a phlebotomist, a person must "meet the standards for the withdrawing of blood . . . ." I.C. § 18-8003(1).

Here, Officer DeLeon testified that the Caldwell Police Department adheres to the blood draw standards promulgated by the Idaho State Police. "[W]hat we have on file is [the Idaho State Police] policy. And it says steps on how to do a blood draw and that we will adhere to the—the rules set forth of the Idaho State Police who is the holder of the program." In other words, the Caldwell Police Department has designated the standards that its officers must adhere to when conducting blood draws—the standards promulgated by the Idaho State Police. There is no evidence that shows the Caldwell Police Department has adopted a written policy to that effect, but, as noted above, Idaho Code section 18-8003 does not require a written policy. Officer DeLeon's unrebutted testimony was sufficient to establish that his employer, the Caldwell Police Department, had designated the standards that he and other Caldwell police officers must follow for blood draws.

Based on the foregoing, the magistrate court did not abuse its discretion when it denied Guerra's motion in limine or her objection at trial. Notwithstanding Guerra's claim to the contrary, Officer DeLeon satisfied the requirements set forth in Idaho Code section 18-8003(1) to qualify as a phlebotomist. He received the appropriate training at an educational institution, and he met the standards for withdrawing blood as designated by the Caldwell Police

14

Department. Thus, he was not precluded from conducting a blood draw for the purpose of determining if Guerra was under the influence of drugs. The magistrate court acted consistently with the applicable legal standards when making its rulings.

The district court reached a similar conclusion on intermediate appeal, holding that the magistrate court did not abuse its discretion when it denied Guerra's motion in limine and overruled her objection at trial. We affirm the district court's decision.

### D. The district court erred when it upheld the magistrate court's ruling permitting Officer DeLeon to testify about the motor vehicle warning on Guerra's medication bottles.

During Guerra's trial, the prosecutor asked Officer DeLeon if the medication bottles found in Guerra's possession contained any warning labels. Anticipating that Officer DeLeon would testify concerning the content of those labels, Guerra objected to the question on the basis that the testimony was hearsay. The magistrate court overruled Guerra's objection but provided a limiting instruction to the jury: "So the officer is about to testify as to what he reviewed on the labels of prescription bottles and that is for the limited purpose of the officer's understanding and not for the truth of the matter asserted." Officer DeLeon then testified concerning three warnings that existed:

> So those pill bottles have warning labels, signs on them, just like my pill bottles have warning signs on them, to take due caution when operating motor vehicles, heavy equipment, don't mix with alcohol and be careful on taking the substance with other medications.

The district court held that the magistrate court's "ruling was somewhat garbled but correct." Specifically, the district court reasoned that that the warnings on the labels were being offered for the non-hearsay purpose of proving that the cautionary words existed and would have or should have been seen by Guerra:

> Here, the statements were offered for the existence of the warnings, not the truth of the statements made; the relevance was in the fact that the warnings existed. The impression of the label upon the officer was not important here, the relevance would be the impression of the warnings on the defendant. The warnings were not being offered as proof that the medicines were dangerous but only for the fact that the cautionary words existed and would have or should have been seen by the defendant.
>
> The error in connecting the admission to the understanding of the officer rather than the defendant was harmless, as the significant part of the limitation was that the existence of the warnings were [sic] not offered for the truth of the statements but only as to the existence of them.

Guerra contends the admission of Officer DeLeon's testimony was erroneous. She argues that Officer DeLeon's testimony was hearsay, and that the State did not argue any exception to the rule against hearsay. Guerra asserts that Officer DeLeon's testimony was intended to show that it was unsafe for her to operate a motor vehicle because the medications were intoxicating. Further, she argues that Officer DeLeon's testimony about the warning labels was a deciding factor in the trial. We agree with Guerra in part and reverse the decision of the district court.

To sort out the admissibility of Officer DeLeon's testimony we begin with the observation that this case presents a classic example of potential hearsay-within-hearsay. The *written* warnings on the pill bottles may constitute hearsay and Officer DeLeon's *oral* testimony about those written warnings may constitute hearsay because the actual declarant of those warnings is not offering the evidence in court. We recognize that the question of the admissibility of product labels under the hearsay rule and its exceptions has been the subject of much litigation with mixed results. *See, e.g.*, *State v. Hill*, 104 N.E.3d 794, 806 (Ohio 2018) (holding that a prescription bottle label, even if considered hearsay, would be admissible under the business records exception); *Phillips v. State*, 25 N.E.3d 1284, 1289 (Ind. Ct. App. 2015) (holding a crib label warning users not to use the crib if broken was not hearsay because the warning was a directive or imperative); *Burchfield v. State*, 892 So. 2d 191, 198 (Miss. 2004) (holding a medication label is "unquestionable hearsay" when used to prove the contents of that medication); *Com. v. Harvey*, 666 A.2d 1108, 1110 (Pa. 1995) (noting that product names on containers were unlikely to be hearsay, while product labels to establish *ingredients* may be hearsay subject to a hearsay exception); *Parham v. Johnson*, 126 F.3d 454, 460 (3d Cir. 1997) (noting the warning label on a medication bottle may be non-hearsay if offered to show the doctor's notice as to the label); *State v. Heuser*, 661 N.W.2d 157, 163 (Iowa 2003) (assuming a product label was hearsay and proceeding to whether any hearsay exception applies).

To be clear, the pill bottles found in Guerra's car were not offered or admitted into evidence, and our opinion today does not reach the issue of the admissibility of the written warnings themselves. Our focus today is solely on Officer DeLeon's oral testimony recounting the warnings since it is well understood that each part of a hearsay-within-hearsay statement must conform to a hearsay exception in order to be admissible. *See* I.R.E. 805. Since we hold that Officer DeLeon's testimony was inadmissible in part and reverse on that basis, we need not address the separate issue of whether the written warnings contained on the medication bottles

16

were admissible under Rule 801 or its exceptions.

Turning to the admissibility of Officer DeLeon's testimony, we first address the State's argument that the warnings Officer DeLeon testified to did not constitute "assertions of fact." Hearsay is a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers into evidence to prove the truth of the matter asserted in the statement. I.R.E. 801(c). A "statement" is a "person's oral *assertion*, written *assertion*, or nonverbal conduct, if the person intended it as an *assertion*." I.R.E. 801(a) (emphasis added). To constitute hearsay under Rule 801, a statement must be an "assertion of fact," and it must be offered by the proponent for the purpose of proving the truth of the assertion. *State v. Salinas*, 134 Idaho 362, 365, 2 P.3d 747, 750 (Ct. App. 2000) (citing *State v. Gomez*, 126 Idaho 700, 704, 889 P.2d 729, 733 (Ct.App.1994)).

The Court of Appeals addressed what constitutes an "assertion of fact" in *State v. Salinas*, when it held that an officer's testimony as to a renter's request for assistance was not hearsay because the renter's request was not an assertion. 134 Idaho 362, 365–66, 2 P.3d 747, 750–51 (Ct. App. 2000). The officer in *Salinas* testified that a renter had asked for his help to "remove all the people that were in her apartment[.]" 134 Idaho at 365, 2 P.3d at 750. The Court of Appeals reasoned "in order to constitute hearsay, a statement must be an assertion of fact" and the renter's communication to the officer was a "request" not a "statement of fact[.]" *Salinas*, 134 Idaho at 366, 2 P.3d at 751. Thus, the court in *Salinas* held that the officer's testimony was not hearsay as the renter's request "contained no assertion of any fact," meaning it necessarily could not have been offered for the truth of some matter asserted (i.e., it asserted nothing). *Id.*

Similarly, in *State v. McDonald*, the Court of Appeals held that an officer's testimony as to the verbal directions made by another officer to the defendant was not hearsay because the directions testified to did not assert a fact with any truth-value. *State v. McDonald*, 141 Idaho 287, 288, 108 P.3d 434, 435 (Ct. App. 2005). The officer in *McDonald* testified that "the subject was placed in the position, instructed to look at a stimulus, instructed how to submit to this test, specifically, holding his head stationary and watching the stimulus[.]" *Id.* The testifying officer was not the officer who gave those instructions to the defendant. *Id.* The Court of Appeals adopted the State's analysis that instructions are "without truth-value" because they can never be "*true* in the sense of the prohibition against hearsay[]" as they are not "declarative" statements but rather "command[s]" or "request[s], incapable of being proved true or false." *Id.* at 288–89,

17

108 P.3d at 435–36 (emphasis original). Thus, the court held "instructions are not hearsay[]" and affirmed the district court's ruling that the officer's testimony as to another officer's verbal instructions directed at the defendant was not hearsay. *Id*. at 288, 108 P.3d at 435.

The Court of Appeals' decisions, treating instructions, commands, and requests as non-assertive communications for purposes of the rule against hearsay, are consistent with other authorities on the subject. *See, e.g.*, 29 Am. Jur. 2d Evidence § 655 ("Orders and threats, for example, are not 'hearsay,' since they are not declarations of fact capable of being true or false, and cannot be offered to prove a matter asserted."); 31A C.J.S. Evidence § 359 (internal citations omitted) ("A statement that is not an assertion, is not hearsay, such as a command which is not assertion of fact, an order or instruction, or an inquiry."); 2 McCormick on Evid. § 246 (8th ed.) (internal citations omitted) ("When conduct or statements are not assertive or when they are assertive but are not used to prove the truth of the matter asserted, the statement should generally not be treated as hearsay because it does not fit the literal definition and because under these circumstances the danger of insincerity is usually significantly reduced.").

The Hearsay Handbook gives several illustrative examples of signs that are nonassertive (and thus not hearsay) and signs that are assertive (and thus hearsay):

Many signs are nonassertive, and thus are not hearsay. Examples include:

"Keep off the grass,"

"Slow Down,"

"Thank you for not smoking,"

"Give to United Way."

Other signs are assertive, and thus are hearsay. For example, if a sign says, "Danger, Live Wire," it is hearsay if offered to prove that the wire is live, or that it is dangerous. (However, such a sign might have direct legal significance to show compliance with a safety regulation or duty to warn, or constitute circumstantial evidence to prove notice to someone who was electrocuted by the wire.)"

Hearsay Handbook 4th Nonassertive Writing § 2:3 (referencing McCormick on Evidence §§ 246, 249 (7th ed.); 29 Am. Jur. 2d, Evidence §§ 664 to 678; C.J.S., Evidence §§ 311 to 336; and Jones on Evidence Ch. 24 (7th ed.)).

Officer DeLeon testified to three warnings or "signs" on the medication bottles. He testified that the warnings were: (1) "take due caution when operating motor vehicles, heavy equipment"; (2) "don't mix with alcohol"; and (3) "be careful on taking the substance with other medications." We agree with the State that the "don't mix with alcohol" and "be careful on

18

taking the substance with other medications" warnings were nonassertive much like the "slow down" sign used as an example in the Hearsay Handbook. These statements were commands and because they were not capable of being proven true, they do not constitute hearsay under Rule 801 and were properly admitted into evidence.

Officer DeLeon's testimony concerning the "take due caution when operating motor vehicles" warning, however, is not so straightforward. A leading evidence treatise explains that even commands can constitute hearsay if the circumstances and/or wording demonstrate an intent to assert:

> Despite the importance of forms of the word "assert" in the definition of hearsay, that term is nowhere defined. The contemporary dictionary meaning is to state positively or strongly. However, in the pre-Rule world of evidence, the word "assert" carried no connotation of being positive or strong. A favorite of writers in the field for at least a century and a half, the word simply means *to say that something is so*, e.g., that an event happened or that a condition existed. Unfortunately, this definition is nowhere set out, and as a consequence, contemporary courts sometimes exclude from the hearsay definition questions or imperative statements apparently categorically (or at least ordinarily) because they are not directly assertive. *More appropriately nuanced opinions find such statements hearsay despite their form if the circumstances and/or wording demonstrate an intent to assert.*

2 McCormick on Evid. § 246 (8th ed.) (internal citations omitted) (emphasis added).

Here, the inclusion of a warning on a medication bottle to "take due caution when operating a motor vehicle or heavy equipment" is more than just an admonishment. The warning impliedly asserts that the medication in the bottle may impair the user's ability to drive a car or use heavy equipment. Because this warning constitutes an assertion of fact that is capable of being proven true (i.e., the medication may impair the ability to drive), Officer DeLeon's testimony concerning that warning constituted an assertion of fact and is subject to the hearsay rules.

The State argues that even if the motor vehicle warning constituted an assertion, it was properly admitted for a non-hearsay purpose. The magistrate court instructed the jury that the warning evidence was being admitted for the limited purpose of "Officer DeLeon's understanding." The State had the burden at trial to show that the testimony was relevant to an issue in the case. *State v. Hill*, 161 Idaho 444, 448, 387 P.3d 112, 116 (2016) ("To show that a statement is not offered for the truth of the matter asserted, the party arguing for the admission

must show that the statement will be relevant to an issue in the case without regard for its truthfulness."). We agree with the district court that Officer DeLeon's understanding is irrelevant and conclude that the State failed to carry its burden of demonstrating a proper non-hearsay purpose for the motor vehicle warning evidence.

On appeal before this Court, the State attempts to polish its position by arguing that the warning evidence was admissible for the non-hearsay purpose of showing the effect it had on Officer DeLeon's investigation. The problem with this argument is that the record does not bear out the assertion. The record shows that Officer DeLeon made the decision to arrest Guerra and conduct the drug recognition evaluation before he saw the warnings on the labels.

The State also argues on appeal that the warning evidence was admissible for the non-hearsay purpose of demonstrating Guerra's knowledge. This theory of admissibility is based solely on the district court's analysis adopting, *sua sponte*, a new non-hearsay purpose for which Officer DeLeon's testimony was admitted. In rejecting the magistrate court's non-hearsay purpose of notice to Officer DeLeon, the district court held:

> Here, the statements were offered for the existence of the warnings, not the truth of the statements made; the relevance was in the fact that the warnings existed. The impression of the label upon [Officer DeLeon] was not important here, the relevance would be the impression of the warnings on [Guerra].

However, the non-hearsay purpose the district court relied upon is unavailable as a matter of law. The "existence" and "impression" (i.e., notice or imputed knowledge) of the motor vehicle warning as to Guerra is legally irrelevant to convicting her of driving under the influence in violation of section 18-8004(1)(a).

When evidence is objected to as hearsay but admitted as non-hearsay because it is offered for a non-hearsay purpose, that non-hearsay purpose must be relevant to a fact of consequence in the determination of the action. *See State v. Davis*, 115 Idaho 216, 219, 307 P.3d 1242, 1245 (Ct. App. 2013); I.R.E. 401. Here, Guerra's awareness or "impression" of the motor vehicle warning is only relevant to the determination of the action if Guerra's knowledge (i.e., state of mind or *mens rea*) is an element of the crime as defined in section 18-8004(1)(a). A plain reading of our DUI statute in pertinent part establishes that no specific *mens rea* is required:

> It is unlawful for any person who is under the influence of alcohol, drugs or any other intoxicating substances, or any combination of alcohol, drugs and/or any other intoxicating substances, or who has an alcohol concentration of 0.08, as defined in subsection (4) of this section, or more, as shown by analysis of his blood, urine, or breath, to drive or be in actual physical control of a motor vehicle

20

within this state, whether upon a highway, street or bridge, or upon public or private property open to the public.

I.C. § 18-8004(1)(a).

Driving under the influence, as charged under section 18-8004(1)(a), does not require the State to prove a specific state of mind or *mens rea* because it is a general intent crime. *See State v. Woolf*, 120 Idaho 21, 24, 813 P.2d 360, 363 (Ct. App. 1991) (holding the subjective intent of a defendant is immaterial to defending against, or securing, a conviction under section 18-8004(1)(a)); *cf. Matter of Vogt*, 117 Idaho 545, 546, 789 P.2d 1136, 1137 (1990) (holding that "the State is not required to prove that a person had any intent to drive" in the context of a driver's license suspension hearing based on the defendant's refusal to submit to a field sobriety test).

Crimes in Idaho are categorized as either "general intent" or "specific intent" crimes. *State v. Stiffler*, 117 Idaho 405, 406, 788 P.2d 220, 221 (1990). "A general criminal intent requirement is satisfied if it is shown that the defendant knowingly performed the proscribed acts . . . but a specific intent requirement refers to that state of mind which in part defines the crime and is an element thereof." *Id*. (internal citation omitted) (quoting *State v. Gowin*, 97 Idaho 766, 767–68, 554 P.2d 944, 945–46 (1976)). In other words, general intent crimes, like driving under the influence, are concerned with prohibiting the act itself—not a particular state of mind conjoined to the prohibited act. In Idaho "the rule is well established that it is competent for the legislature to prohibit the doing of a particular act and to provide a penalty for the violation of the prohibition[ ]" without requiring the State to prove the defendant possessed a particular *mens rea* in carrying out that prohibited act. *State v. Sterrett*, 35 Idaho 580, 582–83, 207 P. 1071, 1072 (1922) (citing 1 Wharton's Criminal Law, 11th ed., sec. 143, p. 187). In sum, the knowledge or state of mind of a defendant is legally irrelevant to convicting a defendant of driving under the influence in violation of section 18-8004(1)(a).

Here, the "existence" and "impression" (i.e., notice or imputed knowledge) of the motor vehicle warning as to Guerra was legally irrelevant to convicting Guerra of driving under the influence in violation of section 18-8004(1)(a). Guerra's knowledge or impression of the motor vehicle warning is not a fact of consequence to proving Guerra was driving under the influence. From this, it follows that the district court, in reasoning Officer DeLeon's testimony was admissible for the non-hearsay purpose of notice or knowledge to Guerra, did not act in accordance with applicable law because the non-hearsay purpose it relied upon is legally

irrelevant. Thus, the theory of admissibility on this point fails as a matter of law.

Finally, we must address whether the decision to admit the motor vehicle warning evidence was harmless. "A defendant appealing from an objected-to, non-constitutionally-based error shall have the duty to establish that . . . an error occurred, at which point the State shall have the burden of demonstrating that the error is harmless beyond a reasonable doubt." *State v. Montgomery*, 163 Idaho 40, 46, 408 P.3d 38, 44 (2017) (quoting *State v. Perry*, 150 Idaho 209, 222, 245 P.3d 961, 974 (2010)). This Court, relying on the two-part test articulated by the Supreme Court of the United States in *Yates v. Evatt*, 500 U.S. 391 (1991), recently clarified Idaho's harmless error rule:

> Harmless error is error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record. Proper application of the *Yates* two-part test requires weighing the probative force of the record as a whole while excluding the erroneous evidence and at the same time comparing it against the probative force of the error. When the effect of the error is minimal compared to the probative force of the record establishing guilt beyond a reasonable doubt without the error, it can be said that the error did not contribute to the verdict rendered and is therefore harmless.

*State v. Garcia*, 166 Idaho 661, 674, 462 P.3d 1125, 1138 (2020) (internal citations and quotation marks omitted).

The State makes two arguments related to harmless error. First, the State argues that Guerra failed to challenge the district court's determination that the admission of the motor vehicle warning evidence was harmless so this Court must affirm the district court's decision on that basis. *See Schmidt v. Huston*, 167 Idaho 320, 325, 470 P.3d 1129, 1134 (2016) ("Where a lower court makes a ruling based on two alternative grounds and only one of those grounds is challenged on appeal, the appellate court must affirm on the uncontested basis." *State v. Grazian*, 144 Idaho 510, 517—18, 164 P.3d 790, 797—98 (2007)). Contrary to the State's assertion, the district court did not rule that the admission of the warning evidence was harmless error. The district court determined that the magistrate court's stated non-hearsay purpose for admitting the warning evidence was erroneous and then substituted its own view of the proper non-hearsay purpose. In making the substitution, the district court recognized that any time evidence is admitted for a non-hearsay purpose, there must be a limiting instruction. A careful reading of the district court's decision reveals that it, in effect, analyzed whether the limiting instruction given by the magistrate court was sufficient to support the non-hearsay purpose adopted by the district court. The district court's ruling was as follows:

> The error in connecting the admission to the understanding of the officer rather than the defendant was harmless, as the significant part of the limitation was that the existence of the warnings were not offered for the truth of the statements but only as to the existence of them.

The State's waiver argument is unavailing because it is based on a misreading of the district court's decision. The district court did not do the harmless error analysis required by *State v. Garcia*, 166 Idaho 661, 674, 462 P.3d 1125, 1138 (2020).

The State's second argument is that the motor vehicle warning evidence is redundant of other evidence admitted at trial. It is true that the State presented other evidence that showed drugs could have impaired Guerra's ability to drive a vehicle. That evidence included Officer DeLeon's testimony stating that, in his opinion, Guerra was under the influence of drugs and unable to operate a vehicle safely. Additionally, a toxicologist testified that Guerra's blood sample tested positive for drugs that *could* result in muscle weakness, dizziness, sleepiness, slurred speech, rigid movements, uncoordinated movements, and confusion. That said, Officer DeLeon's testimony concerning the motor vehicle warning was not merely redundant evidence but important causal evidence.

To prove that a person is guilty of driving under the influence, the State must prove more than a driving impairment; rather, the State must prove that the impairment was *caused* by drugs. *See Stark*, 157 Idaho at 31, 333 P.3d at 846 ("In other words, proving an impairment does not prove the cause of the impairment."). Here, Officer DeLeon's testimony about the warning was causal evidence linking his testimony about signs of Guerra's impairment to the positive toxicology results and the toxicologist's testimony about what *could* result from certain drugs. This is so because Officer DeLeon's testimony as to the warning labels, as explained above, came in for the truth of the matter they asserted—that the medication may impair the ability to drive.

The harmfulness of allowing Officer DeLeon's testimony about the warning to come in for the truth of the matter asserted is evidenced in the statements of multiple jurors during voir dire in response to the prosecutor's questions related to taking prescription medications while driving. For example, one juror stated "[m]y opinion would be if the bottle tells you not to drive or use machinery, you don't do it. You follow the instructions." Another juror, when asked about their prior experience while taking prescription medications, stated they did not drive while taking the medications because of "[b]oth" the effects and the "wording" on the medication

23

bottle. Overall, the prosecutor during voir dire made a point of asking jurors about warning labels on medication bottles as *connected to* impaired driving. In light of this, the probative force of Officer DeLeon's testimony about the warning, as it tended to solidify causation in some jurors' minds, cannot be fairly denied. We cannot say that the error here "did not contribute to the verdict rendered and is therefore harmless." *Garcia*, 166 Idaho at 674, 462 P.3d at 1138. The State has not met its burden of establishing beyond a reasonable doubt that Officer DeLeon's testimony concerning the warning labels did not contribute to the guilty verdict. *See Montgomery*, 163 Idaho at 46, 408 P.3d at 44.

In sum, Officer DeLeon's testimony concerning the motor vehicle warning was hearsay, and the State did not—as required by the Idaho Rules of Evidence—proffer an exception to the rule against hearsay or demonstrate how the warning was relevant to admit for a non-hearsay purpose. Consequently, the magistrate court abused its discretion when it allowed Officer DeLeon to testify about the motor vehicle warning in violation of Idaho Rule of Evidence 802. *See, e.g.*, *Phillips v. E. Idaho Health Servs., Inc.*, 166 Idaho 731, 750, 463 P.3d 365, 384 (2020) (stating it is an abuse of discretion when a trial court fails to apply the legal standards applicable to the specific choices available). The State has not carried its burden of proving the error was harmless. Therefore, we hold that the district court erred when it upheld the magistrate court's ruling.

## IV. CONCLUSION

For the reasons discussed above, we affirm the district court's decision in part and reverse in part. This matter is remanded to the district court with instructions to vacate the judgment and remand the case to the magistrate court for further proceedings consistent with this opinion.

Chief Justice BEVAN, Justices STEGNER and MOELLER, and Justice Pro Tem, TROUT, CONCUR.